**Ike BAILEY, Plaintiff-Appellant,**

**v.**

**J. Patrick McCANN, Director of the Pari-Mutuel Wagering Division of the Department of Business Regulation of the State of Florida, Defendant,**

**Theodore J. Zornow, President of the United States Trotting Association, Defendant-Appellee.**

**No. 76–1747.**

United States Court of Appeals, Fifth Circuit.

April 14, 1977.

W. Paul Thompson, Clayton Adkinson, DeFuniak Springs, Fla., for plaintiff-appellant.

Harry Lewis Michaels, Tallahassee, Fla., for defendant-appellee.

Charles F. Tunnicliff, Tallahassee, Fla., for J. Patrick McCann.

## ON PETITION FOR REHEARING

Before AINSWORTH, CLARK and RONEY, Circuit Judges.

RONEY, Circuit Judge:

The issue in this case is whether the denial by the United States Trotting Association of a Harness Trainer-Driver's License to plaintiff was sufficient "state action" to satisfy a § 1983 claim. We affirm the district court's summary judgment that the Association "is not a person acting under color of state law within the meaning of 42 U.S.C. § 1983, and no action will lie against [it] under the statute."

■ Seeking relief against both a state official and the United States Trotting Association, plaintiff appealed from a summary judgment entered in favor of only one defendant, the Association. We dismissed the appeal for lack of the requisite certification required under Rule 54(b), Fed.R. Civ.P. *See Bailey v. McCann,* 539 F.2d 501 (5th Cir. 1976).

■ At that time, only the order granting the motion for summary judgment was submitted to us, not a final judgment. The plaintiff has now obtained the entry of a final judgment against him, and an order from the district court stating there is no just reason for delay and that the entry of summary judgment on behalf of defendant, United States Trotting Association was a final determination as to the rights and liabilities between plaintiff and that defendant. With the case in this posture, we have concluded that, although not technically proper for a petition for rehearing, judicial expediency dictates that we set aside our prior order of dismissal and reach and resolve the merits of this appeal.

■ Plaintiff, a harness racing driver, commenced this action under 42 U.S.C.A. § 1983 against a state officer for denying him a Florida Harness Driver's License, and against the United States Trotting Association for denying him membership in and a license from the Association. Plaintiff asserts that Florida refused to issue him a license because "applicants therefore must hold a current license with the United States Trotting Association." The defendants deny that the State of Florida requires a harness driver to have an Association driver's license before he is permitted to

drive in a harness race in Florida. Since this is an appeal from a summary judgment in favor of defendant, however, this issue of fact must be resolved in favor of the plaintiff for the purposes of review. *See Boazman v. Economic Laboratory,* 537 F.2d 210, 214 (5th Cir. 1976). Therefore the legal question is whether the State's reliance on the Association license converts the Association's conduct into state action for § 1983 purposes. The issue as to whether the State's reliance on the Association's licensing requirements and procedures is proscribed by § 1983 is not before us. That issue will be resolved in the part of this case still pending before the district court against the state officer.

The United States Trotting Association (USTA) is a private association which licenses both drivers and tracks involved in harness racing. It receives no state funds and chooses its own officers and directors. No Florida officials are agents involved with the government or operation of the Association. It is not "regulated" by the laws of Florida. Every harness racing track in the State of Florida is a member of the USTA. No horse is permitted to race at a member track unless that horse has been tatooed by the USTA, and has obtained an eligibility certificate from it. The USTA also has various testing procedures for applicants who desire to obtain licenses as either trainers or drivers.

In Florida, harness racing is regulated by the Pari-Mutuel Wagering Division of the Department of Business Regulations. Rule 7E–4.21(11) of the Florida Harness Racing Rules and Regulations provides that "[n]o driver will be permitted to drive in a race at a licensed harness racing meeting until he has presented his Florida State Racing Commission and USTA driver's license to the stewards for examination." Those rules elsewhere provide that "[i]n the event of any situation or occurrence that is not covered by these rules, and there is a rule and regulation of the United States Trotting Association [such] ruling will apply."

The district court concluded "the facts of this case show at most unilateral action on the part of the State of Florida in adopting United States Trotting Association's conduct as its own."

■ 42 U.S.C.A. § 1983 creates a cause of action against persons who deprive others of their rights while acting under color of state law. Specifically, the section provides that "[e]very person who, under color of any statute, . . . subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." The determination of whether there is sufficient state action by nonstate persons to sustain a § 1983 claim must be made on a case by case basis. "Only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961).

■ Where the institution accused of constitutional violation is private, the plaintiff will bear a heavier burden of showing that the questioned conduct is really tantamount to that of the State. As the Supreme Court summarized its rulings in this area, "[o]ur holdings indicate that where the impetus for the discrimination is private, the State must have 'significantly involved itself with invidious discriminations,' *Reitman v. Mulkey,* 387 U.S. 369, 380, 87 S.Ct. 1627, 1634, 18 L.Ed.2d 830 (1967), in order for the discriminatory action to fall within the ambit of the constitutional prohibition." *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 173, 92 S.Ct. 1965, 1971, 32 L.Ed.2d 627 (1972). This significant State involvement can take the form of judicial enforcement of private discriminatory agreements, *Shelley v. Kraemer,* 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948), or of a conspiracy between public officials and a private person, *Adickes v. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), or of *de facto* State partnership with a discrimina-

ting private institution, *Burton v. Wilmington Parking Authority, supra.*

■ Plaintiff has failed to bring the USTA within the scope of any of these tests of state action. The fact that the State chooses to accord automatic weight to some of the defendant's decisions does not alone render those decisions state action. The State may at any time choose to do otherwise and adopt and use its own standards. The fact that the State requires a USTA license in order to race is no more significant than its requirement of a law degree from an approved school as a prerequisite for taking the bar examination. Such a requirement does not change the conduct of private law schools into state action.

The district court's decision is in accord with the decisions of this Court. In *Fulton v. Hecht,* 545 F.2d 540 (5th Cir. 1977), a greyhound breeder and racer brought a § 1983 action against a kennel club because the club refused to renew his contract to race at its track. The club was private and the contract refusal effectively precluded the plaintiff from engaging in greyhound racing. Despite the detailed state supervision of greyhound racing and the fact the State and the kennel club shared the proceeds from the pari-mutuel betting at the track, the Court concluded:

> We fail to find that "necessary" sufficiently close connection between this act and the State so as to treat it as the act of the State. The evidence is that the State of Florida . . . does not regulate booking contracts between the Kennel Club and the dog owners. In fact, the State has no control over the contract. [Plaintiff] has not shown that the State either directly or indirectly participated in the decision not to renew his contract.

545 F.2d at 543.

In *Ford v. Harris County Medical Society,* 535 F.2d 321 (5th Cir.), *cert. denied,* —— U.S. ——, 97 S.Ct. 492, 50 L.Ed.2d 589 (1976), a Texas physician being investigated by his professional association brought suit under § 1983 seeking procedural due process rights to counsel and cross-examination.

The defendant association was affiliated with the American Medical Association and received no funds from the State. In face of plaintiff's argument that the association operated as an arm of the Texas State Board of Medical Examiners, the Court affirmed dismissal of the complaint for insufficient state action. The Court stressed that the defendant association had no power to issue the licenses which permit one to practice medicine in the State, and was not delegated such authority.

In the instant case, it is the Pari-Mutuel Wagering Division that determines who may be issued a license, and it is a unilateral decision of that agency of government to use the USTA license as a prerequisite for a valid Florida license. Any defect in the USTA system may translate into a defect in the State system for § 1983 purposes, but it does not convert USTA conduct into state action. State adoption of the standards of a private organization as part of a State regulatory scheme which is not administered by that organization, is no more state action by that organization than is the adoption of State regulations by a wholly private organization. *See Stock v. Texas Catholic Interscholastic League,* 364 F.Supp. 362 (N.D.Tex.1973).

AFFIRMED.