Thomas J. SIMS, Plaintiff-Appellant,

v.

JEFFERSON DOWNS, INC. et al.,
Defendants-Appellees.

No. 78–1404.

United States Court of Appeals,
Fifth Circuit.

Feb. 11, 1980.

Keaty & Garvey, Thomas Keaty, Elliot G. Snellings, New Orleans, La., for plaintiff-appellant.

Shushan, Meyer, Jackson, McPherson & Herzog, Donald A. Meyer, New Orleans, La., for Jefferson Downs and Marie Krantz.

William J. Guste, Jr., Atty. Gen., Baton Rouge, La., John E. Jackson, Jr., Asst. Atty. Gen. State of La., New Orleans, La., for La. State Racing Commission.

Before THORNBERRY, RONEY and TATE, Circuit Judges.

TATE, Circuit Judge:

Sims, a horseman and state-licensed jockey's agent, prays for damages and injunctive relief in this Civil Rights action. 42 U.S.C. §§ 1983, 1985(3). He alleges deprivation of constitutional rights, in that he has been ejected from a state-licensed private race-track and subjected to arrest and track expulsion proceedings, because he attempted to organize the horse trainers into an association and because he publicly and privately criticized the management of the track.

Pursuant to certification, F.R.Civ.P. 54(b), the plaintiff Sims appeals the partial dismissal of his suit. On appeal, the principal defendants before us are the race track (Jefferson Downs, Inc., also referred to as the Jefferson Downs Racing Association) and its manager (Marie Krantz).[1] The substantial issues posed by Sims' appeal are:

I. Was summary judgment properly granted dismissing his section 1983 claim against Jefferson Downs and Krantz? That is, do the pleadings, answers to interrogatories, statement of uncontested facts, and affidavits on file show no genuine issue as to the material fact of state action requisite for a section 1983 suit? If there is no genuine issue, summary judgment was proper.

---

1. The state regulatory agency (the Louisiana State Racing Commission) was also joined as defendant, as were (by supplemental petition granted filing the same date as the judgment appealed from) its members and two of its stewards (Charles LeBlanc and Harold Holland). These parties did not file briefs in this court.

The district court overruled the Commission's motion to dismiss the plaintiff's section 1983 claim as against the state agency defendants. See also note 2, infra.

II. Was summary judgment properly granted dismissing his section 1985(3) claim against Jefferson Downs and Krantz?[2] That is, do the filings show no genuine issue as to the material fact that these defendants' conduct was not grounded on the racial (or at least class-based) discrimination required for a section 1985(3) suit?

We (1) reverse the dismissal of the section 1983 claim, since issues of material fact preclude summary judgment as to it, and (2) affirm the dismissal of the section 1985(3) claim.

### I. Section 1983 Claim

#### A. Issue and Legal Principles Applicable

■ In order to be entitled to relief under section 1983,[3] the plaintiff must show (a) that the defendant deprived him of a right secured to him by the Constitution or federal law and (b) that the deprivation occurred under color of state law. *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978); *Adickes v. S. H. Kress and Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970); *see also White v. Scrivner Corp.*, 594 F.2d 140, 141 (5th Cir. 1979).

Jefferson Downs, the defendant, contends that no state action was involved in its own ejectment of Sims from the race track on account of his criticism and "disruptive" conduct. The defendant argues that its expulsion of Sims was within its proprietary rights as owner and operator of the track; it contends that the mere fact that the track operation was subject to state regulation in much of its activity did not sufficiently implicate the state in the particular conduct complained of so as to constitute state action in its regard. *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 92 S.Ct. 1965, 28 L.Ed.2d 529 (1972).

■ The fact of heavy state regulation does not, in itself, transform otherwise private actions into state action for purposes of the Fourteenth Amendment and section 1983. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). Rather, "the inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Id.*, 419 U.S. at 351, 95 S.Ct. at 453.

■ The determination of whether there is sufficient state action by non-state persons must be made by sifting facts and weighing circumstances case by case. *Bailey v. McCann*, 550 F.2d 1016, 1018 (5th Cir. 1977), citing *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961). This essentially factual determination hinges upon whether the state is shown to be sufficiently connected with the particular aspect of the defendant's conduct complained of, so that the respondent's act is treated as that of the state itself. *Robinson v. Price*, 553 F.2d 918 (5th Cir. 1977). In absence of such sufficient state connexity, the non-state defendant's private conduct is not actionable under section 1983. *Bailey v. McCann, supra; Fulton v. Hecht*, 545 F.2d 540 (5th Cir. 1977).

---

**2.** On the same date that the district court granted the motion by Jefferson Downs and Krantz for summary judgment, it also granted the motion by the Louisiana State Racing Commission to dismiss the complaint for the failure to state any claim for relief under section 1985(3) as to it. Tr. 95, 125. This appeal from the judgment thus technically concerns the dismissal of the 1985(3) claim against the Commission also. Assuming that this issue is likewise before us, the 1985(3) claim against the Commission was properly dismissed, *inter alia*, for the reasons stated in Part II of our opinion, upholding the 1985(3) dismissal against the private defendants.

The plaintiff-appellant expressly concedes in brief that his additionally-asserted claim under section 1981 was properly dismissed as to all parties.

**3.** 42 U.S.C. § 1983: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

■■ The burden upon the party moving for a summary judgment is, first, to show the absence of a genuine issue concerning any material fact. *Boazman v. Economics Laboratory, Inc.*, 537 F.2d 210, 213–14 (5th Cir. 1976). Hence, for purposes of appellate review of a summary judgment dismissing a plaintiff's section 1983 claim, the question of whether there is a factual issue as to state action must be resolved in favor of the plaintiff, in the absence of factual showing clearly negativing sufficient state connexity. *Bailey v. McCann, supra.*

### B. Application of these Principles to the Present Case

Jefferson Downs' motion for summary judgment was supported by a memorandum of law and a "statement of uncontested facts." These showed its proprietary rights in operation and management of the track. They also purported to show a dichotomy between the private management of the Jefferson Downs Racing operations and the regulatory powers of the Louisiana State Racing Commission. (Jefferson Downs is one of the five tracks licensed by the Commission to operate in Louisiana, subject to Commission regulation and rules.)

In the district court's reasons for judgment, it sustained Jefferson Downs' motion for summary judgment essentially on the basis of the plaintiff's allegations and of the state statutes and regulatory scheme pertaining to horse racing.[4] On this basis, it

concluded that the expulsion efforts of Jefferson Downs, the private operator, were independent of expulsion efforts by the Commission's track stewards, who *were* state officials.[5]

In essence, Jefferson Downs argues that its own expulsion of the plaintiff Sims, and its action causing his arrest for coming onto the track grounds, were as a matter of law private and non-state actions within its proprietary rights. The contemporaneous actions of the track stewards in suspending Sims, Jefferson Downs contends, were likewise as a matter of law acts of state regulatory agents which were entirely independent of Jefferson Downs' conduct, so that it cannot be charged with that state action by the track stewards.

For purposes of summary judgment, the difficulty with the reliance by Jefferson Downs upon these abstract propositions is that it has made no factual showing to contravene Sims' allegations that Jefferson Downs had ejected him from its track, in derogation of rights of free speech and of assembly guaranteed him by the First and Fourteenth Amendments, under color of the state statutes regulating horse racing, La. R.S. 4:141–83, indicating, *inter alia*, that the racing commission stewards had participated with Jefferson Downs in this action.[6] Furthermore, in the exhibits attached to the interrogatories filed by the co-defendant racing commission, there are substantial factual indicia that Jefferson Downs had

---

4. See district court's reasons for judgment, Tr. Vol. 2, pp. 11, 17. For that reason, apparently, the trial court did not grant the plaintiff's forcefully argued motion for continuance of the summary judgment hearing until Jefferson Downs had answered the detailed interrogatories that, allegedly, would more clearly show the factual interdependence between the actions of Jefferson Downs and those of the racetrack stewards, who are concededly state officials.

Nevertheless, the record does contain the answers to similar interrogatories by the State Racing Commission, Tr. Vol. 1, pp. 60–65, including in the exhibits folder various correspondence and other documentary material in the Commission files attached thereto. These document exhibits will be identified below as in the "Exhibits."

5. *See* La.R.S. 4:172 (1968), which provides, *inter alia*, that in matters pertaining to racing, "the orders of the stewards supersede the orders of the officers and directors of the [racing] association and the stewards shall have supervision of the daily conduct of racing," that they "have general supervision over all personnel directly connected with racing," that they "may suspend for no greater period than the duration of the meeting plus ten days," and that they "shall order ejected from the grounds . . . any improper or objectionable persons."

6. See, e. g., Articles VII, VIII, and IX, original complaint, and Article XV of supplemental complaint.

availed itself of the commission's regulatory powers in aid of its expulsion of Sims from its track,[7] particularly through the track stewards, state regulatory agents, all three of whom however are paid by Jefferson Downs.[8]

■ The record thus demonstrates a disputed issue of material fact concerning the involvement of state agents acting under color of state law and their close connexity with the expulsion by Jefferson Downs of Sims from its race track because of his exercise of alleged constitutional rights. As in *Fitzgerald v. Mountain Laurel Racing, Inc.,* 607 F.2d 589 (3rd Cir. 1979), and *Catrone v. Massachusetts State Racing Com'n,* 404 F.Supp. 765 (D.C.Mass., 1975), *vacated* (on abstention grounds, but approving rationale) 535 F.2d 669 (1st Cir. 1976), the action of the state racing commission or its stewards—if we construe the disputed facts most favorably to the plaintiff as required for summary-judgment-review purposes—was so intimately involved with the track-management's private act of expelling Sims as to constitute state participation in the challenged act.

Summary judgment dismissing the plaintiff's section 1983 claim must therefore be reversed.

## II. *Section 1985(3) Claim*

The district court also dismissed the plaintiff's section 1985(3)[9] claim against Jefferson Downs and its manager (Krantz), as well as (see note 2, *supra*) against the state racing commission. This statute creates a cause of action for damages against private persons who conspire to deprive a

---

**7.** See Exhibits:

Letters to the Commission or the track stewards by Jefferson Downs, through co-defendant Krantz (the track's general manager), requesting them to deny admission of Sims to the track because of his disruptive behavior or violation of Racing Rule 14(k) or for alleged violation of a non-existent court order (when *his* preliminary injunction sought from state court had been denied), dated August 25 and 27, 1975, and May 18, 26, 1976. (Rule 14(k), see "Exhibits", subjects a licensee to license revocation for "causing, creating or lending to the incitement of a strike, or through compulsion discourag[ing] any horseman from entering races.") In apparent response to these last letters, the track stewards by Rulings 66 (May 20) and 74 (May 27; amending Ruling 66) stated that Sims was "hereby denied all privileges of the grounds of Jefferson Downs Race Track," for the reason that he had "been ejected by Jefferson Downs management and [was] not allowed on the property of Jefferson Downs Race Track." Among the reasons Jefferson Downs wanted disciplinary action instituted against Sims was that he had "also consistently harassed and embarrassed Jefferson Downs Management." Ltr., Aug. 27, 1975.

In a letter of August 25, 1975, Jefferson Downs wrote Sims to inform him that he was prohibited from admission on any part of the race track property because he allegedly had "consistently engaged in conduct which tends to cause disruption with the association's operation of the track." This letter was delivered to Sims in the presence of and witnessed by C. R. LeBlanc, whom the pleadings and the Commission's answers to the interrogatories show to have been a track steward.

**8.** In note 5, *supra*, we have noted some of the statutory powers of supervision and discipline granted to the track stewards. There are three stewards for the racing season of each track, one appointed by the Commission itself and two appointed by the track, subject to approval of the Commission. Exhibits, Rules of Racing (1971), Rule 35. The track pays the compensation of all three stewards.

In a hearing before the Commission, a track steward forthrightly admitted that a main reason for expulsion of Sims was the management request for it. He further testified to his understanding that management had the right to expel persons objectionable to it, upon which basis the stewards issued rulings denying these objectionable persons the privilege of the grounds. See Exhibits, Meeting of Louisiana State Racing Commission, July 15, 1976, pp. 38–40.

**9.** 42 U.S.C. § 1985(3): "If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

## 614

plaintiff of his constitutional rights. The cause of action so created does not require state action; however, as an essential element "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckinridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971).

■ Neither the pleadings nor any showing in the record indicate other than that the expulsion was directed against Sims alone, based upon his expression of views and his criticism found obnoxious by the track management. Sims argues strongly in brief that (at least for purposes of summary judgment) the discriminatory action was directed against him as a member of a class attempting to organize the trainers into an association. *See Westberry v. Gilman Paper Co.*, 507 F.2d 206 (5th Cir. 1975), *vacated as moot pending rehearing en banc*, 507 F.2d 216 (1975). Nevertheless, so far as the record before us shows, Sims' interest in and efforts to form a trainers' association were shared by no other persons at the track. Thus, the alleged invidious conduct was not class-based as required for a civil rights cause of action under section 1985(3).

We therefore find no error in the district court's dismissal of his section 1985(3) claim.

*Summary*

We reverse the dismissal of the plaintiff's section 1983 claim against the defendants Jefferson Downs and Krantz, and we remand it for further proceedings in the district court; we affirm the dismissal of the plaintiff's section 1985(3) claim against all defendants.

REVERSED AND REMANDED IN PART; AFFIRMED IN PART.