Carol H. WILLIS, Plaintiff–Appellant,

v.

UNIVERSITY HEALTH SERVICES, INC., dba University Hospital, et al., Defendants–Appellees.

No. 92–8763.

United States Court of Appeals, Eleventh Circuit.

June 22, 1993.

Mary M. Brockington, Warner R. Wilson, Anne W. Lewis, Wilson Strickland & Benson, Atlanta, GA, for plaintiff-appellant.

Raymond Gordon Chadwick, Jr., Robert Perry Sentell, III, Knox & Zacks, Augusta, GA, for defendants-appellees.

Before KRAVITCH and HATCHETT, Circuit Judges, ATKINS *, Senior District Judge.

HATCHETT, Circuit Judge:

In this appeal from the district court's entry of summary judgment for the appellee, we affirm the district court's ruling that a hospital's firing of the appellant did not constitute state action for 42 U.S.C. § 1983 purposes.

## FACTS

University Health Services, Inc. (UHS), the appellee, is a private, nonprofit corporation that operates University Hospital pursuant to a lease agreement with the Richmond County Hospital Authority (RCHA), a public hospital authority. UHS employed Carol Willis, the appellant, as a registered nurse at University Hospital in Augusta, Georgia, from December, 1987, until January 2, 1990. During 1989 and January, 1990, Willis also taught private childbirth education classes to prospective parents in Augusta, Georgia. In October, 1990, the *Augusta Chronicle* published a letter Willis wrote to the editor, expressing her opinions on obstetrical practices.[1] On January 2, 1990, after reading the article, UHS officials fired Willis because of "loss of confidence due to poor judgment."[2] University Hospital officials mailed a copy of UHS's grievance policy to Willis, and afforded her a full UHS grievance procedure hearing on August 17, 1990. After the five-hour hearing, the grievance committee upheld Willis's termination.

UHS operates University Hospital pursuant to a lease agreement with the RCHA. RCHA is a public hospital authority "created ... by resolution of the Board of Commissioners of Richmond County, pursuant to the Hospital Authorities Act...." *Richmond County Hosp. Authority v. Richmond County*, 255 Ga. 183, 336 S.E.2d 562, 563 (1985). Accordingly, RCHA's acts would be state acts for purposes of section 1983 liability. *See Wofford v. Glynn Brunswick Memorial Hosp.*, 864 F.2d 117, 118 (11th Cir.1989) (finding that the hospital was a public hospital authority created under O.C.G.A. §§ 31–7–1 *et seq.*, and thus, its actions constituted state action under section 1983).

Willis contends that UHS and RCHA are so intertwined as to implicate state action. UHS contends, however, that UHS and RCHA have only a generalized relationship which is insufficient to establish state action. Both parties rely heavily upon the lease

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

1. The text of the published letter entitled "Offers Criticisms of Doctors and Mothers" was as follows:

 Praise goes to the very few obstetricians in Augusta who realize an educated, aware, responsible woman is an easier patient and much less of a legal risk.

 Shame on the multitude of obstetricians who patronizingly tells moms (in words and actions) 'Don't worry about a thing, I'll take care of everything for you.' No wonder they get sued so often.

 Sympathy goes to the gullible moms whose babies 'sucked out, dragged out, or cut out' instead of them being assisted to 'give birth.'

 Pity on the baby who pays the price with the potential of his life.

 Forgive us, nature, for our lack of faith in you.

2. Appellees Hicks, University Hospital Head Nurse; Goforth, University Hospital employee; Bowcutt, University Hospital Assistant Administrator of Nursing Services; and Herzberg, University Hospital Director of Personnel Services; signed Willis's termination notice.

agreement and urge this court to concentrate on the lease agreement.

Willis highlights the following facts to show an intertwining relationship between UHS and RCHA: (1) UHS is a corporation created for the purpose of assuming the duties of RCHA; (2) RCHA leased its facilities to UHS for forty years for only one dollar; (3) UHS may bring and defend lawsuits either in its own name or in the name or on behalf of RCHA; (4) UHS may enforce indigent care contracts in the name of RCHA; (5) RCHA must, upon request from UHS, exercise its power of eminent domain to acquire property for the purpose of providing for Richmond County's health care needs; (6) RCHA has four members who serve on the UHS board of trustees; (7) UHS must provide RCHA with facilities and support staff services; (8) UHS and RCHA share the same address, telephone number, and physical office; (9) RCHA appoints the UHS trustees and the medical staff board member from UHS' nominations; (10) UHS and RCHA share the same attorneys and accountants and report the accountants' annual audit to each other; (11) UHS must comply with the Georgia Open Records Act; and (12) UHS has a public purpose and exists to serve the public.

On the other hand, UHS highlights the following facts to establish that UHS and RCHA are distinct entities: (1) UHS assumed control of the hospital so that it could be competitive outside of Richmond County; (2) University Health, Inc. is the parent corporation for UHS and other services; (3) UHS has entered a joint venture with a local hospital to develop other care facilities; (4) UHS has broad discretion to diminish, curtail, or cease services to promote the public health needs of the community; (5) UHS is authorized to "augment, improve or increase any existing services or add any service or shift current or new services to another facility"; (6) UHS has authority to determine whether acquisition, construction, or improvement of hospital facilities is necessary; (7) UHS has sole authority to repair or replace any of its assets; (8) UHS may obtain insurance policies payable solely to UHS; (9) UHS has the authority to enforce rules and regulations regarding safety and care; and (10) UHS controls the daily operations and management of the hospital.

## PROCEDURAL HISTORY

On December 28, 1990, Willis filed this lawsuit in the United States District Court for the Southern District of Georgia, pursuant to 42 U.S.C. § 1983, claiming that UHS's relationship with RCHA implicated state action. In her complaint, Willis alleged: (1) UHS's actions infringed upon her right of free speech as guaranteed under the First and Fourteenth Amendments; and (2) UHS's actions deprived her of a property interest protected under the Fourteenth Amendment. UHS moved for summary judgment contending that: (1) its decision to fire Willis was not state action under 42 U.S.C. § 1983; (2) its termination of Willis did not deprive her of rights secured under the Constitution or laws of the United States; and (3) its employment of Willis provided only a privilege and not a property right entitled to protection under the Due Process Clause of the Fourteenth Amendment.

The district court granted summary judgment for UHS, finding that no state action existed to support Willis's claim under 42 U.S.C. § 1983, 804 F.Supp. 1557 (1992).

## ISSUES

To determine whether the district court erred in granting summary judgment, we must decide whether UHS's termination of Willis involved state action.

## STANDARD OF REVIEW

■ On appeal, a grant of summary judgment is subject to *de novo* review. *MacKenzie v. City of Rockledge*, 920 F.2d 1554, 1558 (11th Cir.1991). We review the evidence and all factual inferences in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *MacKenzie*, 920 F.2d at 1558.

## DISCUSSION

 To obtain relief under 42 U.S.C. § 1983, Willis must show (1) that the appellees deprived her of a right secured under the Constitution or federal law and (2) that the deprivation occurred under color of state law. *Sims v. Jefferson Downs Racing Assoc., Inc.*, 778 F.2d 1068, 1076 (5th Cir.1985) (citations omitted). "[A] private hospital is subject to the provisions of 42 U.S.C. § 1983 and the Fourteenth Amendment only if its activities are significantly affected with state involvement." *Greco v. Orange Memorial Hospital Corp.*, 513 F.2d 873, 877 (5th Cir.), *cert. denied*, 423 U.S. 1000, 96 S.Ct. 433, 46 L.Ed.2d 376 (1975). Previously, this circuit set forth the three primary tests the Supreme Court has used to determine whether state action exists: (1) the public function test; (2) the state compulsion test; and (3) the nexus/joint action test. *National Broadcasting Co., Inc. v. Communications Workers of America, AFL–CIO*, 860 F.2d 1022, 1026 (11th Cir.1988).[3] The public function test limits state action to instances where private actors are performing functions "traditionally the exclusive prerogative of the state." *NBC*, 860 F.2d at 1026 (citations omitted). The state compulsion test limits state action to instances where the government "has coerced or at least significantly encouraged the action alleged to violate the Constitution." *NBC*, 860 F.2d at 1026 (citations omitted). The nexus/joint action test applies where "the state has so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise." *NBC*, 860 F.2d at 1026–27 (citations omitted). We must determine on a case-by-case basis whether sufficient state action is present from a non-state actor (defendant) to sustain a section 1983 claim. *Bailey v. McCann*, 550 F.2d 1016, 1018 (5th Cir.1977).

Willis contends that she satisfies each of the three primary tests. After reviewing the record, however, we conclude that Willis fails to satisfy the first two tests. UHS did not exercise powers traditionally reserved exclusively to the state, nor did RCHA coerce or encourage UHS to fire Willis. Hence, we only address whether Willis has shown that UHS and RCHA are so intertwined in a "symbiotic relationship" that they satisfy the nexus/joint action test, thereby demonstrating the existence of state action.

Both parties cite persuasive authority from other circuits to support their contentions.[4] Although each "intertwining" case must be decided on its unique facts, our own former Fifth Circuit has adequately addressed the issue we face in *Greco* on similar facts, and we are persuaded to follow it.[5]

In *Greco*, a physician brought a 42 U.S.C. § 1983 action against the Orange Memorial Hospital Corporation, a private hospital corporation that operated a hospital in a publicly owned building leased from Orange county, alleging that the hospital's policy prohibiting nontherapeutic abortions was unconstitutional. The evidence demonstrated that the county owned the land and built the building which housed the hospital. The private hospital corporation leased the land and hospital from the county for one dollar per year and was bound under the provisions of the lease to operate the hospital as a nonprofit institution and to furnish general public medical and surgical care. The lease required the private corporation to submit annual audits to the county and to furnish the county with any information which it felt necessary to inform the citizens about the operation and financial condition of the hospital. *Greco*, 513 F.2d at 876.

The Fifth Circuit concluded that the physician failed to establish state action for purposes of 42 U.S.C. § 1983 because "Orange County is not sufficiently connected with the

---

**3.** This circuit has noted that these three primary tests apply in cases where a party seeks to hold a private actor liable under the state action doctrine. *NBC*, 860 F.2d at 1025 n. 4.

**4.** Willis cites *Jatoi v. Hurst–Euless–Bedford Hosp. Authority*, 807 F.2d 1214 (5th Cir.), *modified on other grounds*, 819 F.2d 545 (5th Cir.1987); UHS

cites *Crowder v. Conlan*, 740 F.2d 447 (6th Cir. 1984).

**5.** According to *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Orange Memorial Hospital Corporation's activities to imbue those actions with the attributes of the state." *Greco*, 513 F.2d at 882. Specifically, the court found that the private hospital corporation "is ultimately responsible for the daily maintenance, upkeep, and operation of the facility." *Greco*, 513 F.2d at 880. Additionally, the court found that the private hospital corporation must "maintain and operate the hospital at its own expense and ... hold the lessor harmless from any liability incurred in operating the facility ... and provide adequate insurance." *Greco*, 513 F.2d at 880. Moreover, the court found that no direct benefits accrued to Orange County; rather, only indirect benefits accrued to Orange County due to the private hospital corporation relieving the county of the expense and responsibility of operating the hospital. *Greco*, 513 F.2d at 880. Finally, the court found that even though the lease obligates the private hospital corporation "to serve the general public, to admit indigent patients, to abide by the provisions of the Hospital Survey and Construction Act, to provide the county auditor with the yearly financial report (and any other information requested), and to obtain county approval before disposing of hospital authority," no state action existed. *Greco*, 513 F.2d at 881.

 Similarly, in this case, the lease obligates UHS to serve the general public, including indigent patients, and to provide the auditor with a financial report. Most importantly, however, the lease relinquishes RCHA of all liabilities, gives UHS sole discretion to hire and fire employees, provides that UHS is the governing body of University Hospital and medical staff, mandates that UHS maintain and repair the leased property at its own expense, requires UHS to maintain insurance, confers upon UHS the right and authority to make and enforce rules and regulations and safety considerations, and demands that UHS hold RCHA harmless from any court action. Thus, UHS and RCHA are not so intertwined in a symbiotic

relationship as to satisfy the nexus/joint action test.[6] Additionally, the Georgia Supreme Court has previously determined that RCHA and UHS are separate and distinct entities in the eyes of the law, despite some overlapping personnel at the highest level. *Richmond County Hosp. Authority*, 336 S.E.2d at 565. Hence, we hold that Willis has failed to show that state action existed.

Accordingly, we affirm the district court's grant of summary judgment for UHS.

AFFIRMED.

6. The district court previously addressed this issue in Coleman v. University Hosp., No. CV 187–177 (S.D.Ga. Apr. 28, 1988). The court did not find a nexus between the state, in the form of RCHA, and the termination of a UHS employee for section 1983 purposes because UHS, though "not entirely free of any vestige of state supervision," had "sole and exclusive control over personnel decisions" under the terms of the lease agreement between UHS and RCHA. *Coleman*, slip op. at 3.