Ronald D. PATRICK, M.D., FACS, Plaintiff-Appellant,

v.

FLOYD MEDICAL CENTER, Floyd Healthcare Management, Inc., Hospital Authority of Floyd County, and John Does, I, II, III, and IV, Defendants-Appellees.

No. 98-9542.

United States Court of Appeals,

Eleventh Circuit.

Jan. 26, 2000.

Appeal from the United States District Court for the Northern District of Georgia. (No. 97-00300-4-CV-RLV), Robert L. Vining, Jr., Judge.

Before ANDERSON, Chief Judge, and COX and HULL, Circuit Judges.

COX, Circuit Judge:

Ronald D. Patrick, M.D., appeals the summary judgment granted in favor of Floyd Medical Center, Floyd Healthcare Management, Inc., and the Hospital Authority of Floyd County. Patrick claims that Floyd Medical Center violated his Fourteenth Amendment rights to due process and equal protection by denying him medical staff membership and general surgical privileges at Floyd Medical Center. Patrick seeks redress for these constitutional violations pursuant to 42 U.S.C. § 1983. On appeal, Patrick contends that the district court erred in concluding that the actions of Floyd Healthcare Management, Inc. did not constitute state action for purposes of § 1983. We affirm.[1]

I. BACKGROUND

The Hospital Authority of Floyd County (HAFC), a public hospital authority under Georgia law, entered into a Management Agreement (the Agreement) with Floyd Healthcare Management, Inc. (FHM), a private entity, to manage and operate its hospital, Floyd Medical Center. Under the Agreement, FHM

---

[1]Patrick also appeals the district court's denial of his June 19, 1998 motion to compel production of documents and information. Patrick, however, has not explained how the discovery requested pursuant to that motion would change the court's analysis on the dispositive question of state action. Accordingly, we need not reach this issue in light of our disposition of the case.

contracted to supervise the hiring and firing of hospital employees, maintain the hospital, enforce rules and regulations for safety considerations, and operate the hospital on a daily basis. FHM was named the governing body of the medical staff, with the ability to extend membership and clinical privileges, to take disciplinary and other corrective action, and to afford hearings and other process to physicians in connection with all questions of medical staff membership, clinical privileges and corrective action. FHM's decisions and actions under its powers governing the medical staff are deemed by § 8.12 of the Agreement to be decisions and actions taken by HAFC.

HAFC maintained some control over the financial activities of the hospital under the Agreement. For example, HAFC retained control over the accounts receivable of the hospital and used those funds to pay on the public bonds issued by HAFC. HAFC also reimbursed FHM for the reasonable costs and expenses incurred in running the hospital and paid FHM a management fee. HAFC agreed to indemnify FHM from liability arising from the operation of the hospital. Finally, FHM did not assume any of HAFC's liabilities.[2] FHM, however, had numerous financial responsibilities, including maintaining insurance, providing financial reports to HAFC, maintaining the hospital premises, establishing rates and charges for the hospital's services, and collecting fees for the hospital's services.

Patrick submitted an application for medical staff membership and privileges to practice at Floyd Medical Center in May 1995. Patrick's application was subjected to several levels of review, some of which were not specified in the by-laws governing such applications. Patrick's application was finally denied by FHM's Board of Directors in May 1997.

## II. DISCUSSION

The threshold issue is whether the denial of hospital privileges by FHM is state action for purposes of § 1983. We review de novo the district court's grant of summary judgment on this issue, applying the same

---

[2]FHM did assume HAFC's liabilities in a later Lease Agreement (LA). The parties entered into the LA in December of 1996; however, it did not take effect until January of 1998, after the actions at issue in the present case had occurred.

familiar standards as the district court. *See Gitlitz v. Compagnie Nationale Air France,* 129 F.3d 554, 556-57 (11th Cir.1997).

To obtain relief under § 1983, Patrick must show that he was deprived of a federal right by a person acting under color of state law. *See Willis v. University Health Servs., Inc.,* 993 F.2d 837, 840 (11th Cir.1993). Recent Supreme Court precedent reiterates that:

> state action requires *both* an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," *and* that "the party charged with the deprivation must be a person who may fairly be said to be a state actor."

*American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 119 S.Ct. 977, 985, 143 L.Ed.2d 130 (1999) (citations omitted, emphasis in original). Patrick argues that FHM's actions can be attributed to HAFC, a state actor for purposes of § 1983, under the Supreme Court's nexus/ joint action test because FHM and HAFC were "intertwined in a 'symbiotic relationship' " under the Agreement. *Willis,* 993 F.2d at 840 (explaining the nexus/ joint action test). The nexus/ joint action test finds state action where "[t]he State has so far insinuated itself into a position of interdependence with [the private party] that it must be recognized as a joint participant in the challenged activity[.]" *Burton v. Wilmington Parking Auth.,* 365 U.S. 715, 725, 81 S.Ct. 856, 862, 6 L.Ed.2d 45 (1961) (originating the nexus/ joint action test). The Supreme Court has suggested that the symbiotic relationship must involve the alleged constitutional violation. *See National Broadcasting Co. v. Communications Workers,* 860 F.2d 1022, 1027 (11th Cir.1988) (citing *San Francisco Arts & Athletics, Inc. v. United States Olympic Comm.,* 483 U.S. 522, 547 n. 29, 107 S.Ct. 2971, 2986 n. 29, 97 L.Ed.2d 427 (1987)).

Under the nexus/ joint action test, each case must be analyzed on its own facts to determine whether the interdependence between the private and state entities reflects sufficient state involvement to sustain a § 1983 claim. *See Burton,* 365 U.S. at 726, 81 S.Ct. at 862. In *Willis,* our most recent application of the nexus/ joint action test, we scrutinized the relationship between the private entity and the public entity. *Willis,* 993 F.2d at 841. We noted, among other things, that: the private and public entities were separate and

3

distinct under the law; the private entity had the sole discretion to hire and fire employees and was the governing body of the hospital and medical staff; the private entity was responsible for maintenance and repair of the medical facility at its own expense; the private entity was responsible for maintaining insurance and for providing a financial report to the auditor; the private entity had the right and authority to make and enforce rules, regulations, and safety considerations; and the private entity agreed to indemnify the public entity from liability. *See id.* After weighing these factors, we concluded that the private and public entities were not sufficiently intertwined in a symbiotic relationship to satisfy the nexus/ joint action test and held that the private entity's termination of a registered nurse's employment did not involve sufficient state action to sustain a § 1983 claim. *See id.*

Patrick argues that HAFC is intertwined in a symbiotic relationship with FHM because HAFC receives direct financial benefits from FHM. For example, FHM collects revenues from the hospital for HAFC's use in paying the public bonds issued to construct the hospital, while HAFC reimburses FHM only for reasonable expenses incurred in managing the hospital. Furthermore, the Agreement provides the opposite relationship for two factors considered in *Willis:* (1) FHM assumed no risk of loss because HAFC agreed to indemnify FHM for any liability arising from its management of Floyd Medical Center, and (2) FHM did not assume any of HAFC's liabilities.

FHM and HAFC respond that, despite the fact that FHM managed and operated Floyd Medical Center primarily for the benefit of HAFC, FHM had sole responsibility over personnel issues, including credentialing authority over the medical staff; managed and ran the hospital on a daily basis; procured insurance; assumed maintenance (albeit not at FHM's expense); and provided financial audits and reports. Furthermore, FHM and HAFC are distinct legal entities.[3]

---

[3]In fact, counsel informed the court during oral argument that the one member of both entities' boards of directors recused himself from FHM's consideration of Patrick's application.

4

It is true that HAFC has retained more control over FHM's financial activities than the public entity retained over the private entity in *Willis. See id.* There is no evidence, however, that HAFC had anything to do with FHM's decision to deny Patrick's application; rather, the Agreement gave sole authority regarding such decisions to FHM. This fact is critical. We hold that, to sustain a § 1983 claim under the nexus/ joint action test, the symbiotic relationship between the public and private entities must involve the alleged constitutional violation. Here, HAFC did not participate in hospital personnel matters. Moreover, HAFC did not participate in FHM's decision to deny Patrick's application.

The gravamen of Patrick's claim appears to be that competing general surgeons in the relevant geographic area conspired, via their participation and influence in the credentialing process, to deny Patrick's application for economic reasons, not that HAFC did anything to affect Patrick's ability to practice medicine at Floyd Medical Center. There is no evidence that HAFC received any benefit from FHM's decision to deny Patrick's application. *See NBC,* 860 F.2d at 1027-28 (finding no state action where the benefits to the state from a relationship were unrelated to the challenged unconstitutional action by the private entity). Nor has Patrick produced any evidence that HAFC endorsed the constitutional violations about which Patrick complains. *Cf. Burton v. Wilmington Parking Auth.,* 365 U.S. 715, 725, 81 S.Ct. 856, 862, 6 L.Ed.2d 45 (1961) (finding state action where the state "elected to place its power, property and prestige behind the admitted discrimination."). The relationship between the entities does not present the nexus or joint action sufficient to constitute state action in the denial of Patrick's application.

Patrick argues, in the alternative, that § 8.12 of the Agreement, which authorizes FHM to extend membership and clinical privileges at FHM in the name of and on behalf of HAFC and deems all decisions and actions made pursuant to this authority to be decisions and actions of HAFC, automatically transforms FHM's denial of Patrick's application into state action. We cannot agree. Section 8.12 of the Agreement gives FHM agency status to act for HAFC regarding issues of medical staff membership and clinical privileges. The Agreement, however, does not establish that FHM is an entity which can fairly be said to be

5

a state actor. *See American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 119 S.Ct. 977, 985, 143 L.Ed.2d 130 (1999). We concluded above that FHM's denial of medical staff membership and clinical privileges to Patrick was solely FHM's action and that this action could not be fairly attributed to HAFC.

The fact that HAFC may be liable for the acts of FHM under an agency theory does not automatically transform FHM's action into state action. As the Supreme Court has held, a local government entity may not be sued under § 1983 for an injury inflicted solely by its agent. *See Monell v. Department of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). In other words, a governmental entity, such as HAFC, cannot be held liable under § 1983 merely as a matter of respondeat superior. *See Brown v. Neumann* 188 F.3d 1289, 1290 (11th Cir.1999) (citing *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037-38). Rather, it is only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037-38. Patrick does not contend that FHM acted pursuant to an official policy or custom of HAFC. Nor does the record reveal any such policy or custom. Instead, the record shows that FHM acted pursuant to recommendations of its own agents, and that its agents may not, in all respects, have been acting pursuant to Floyd Medical Center's written by-laws. The inevitable conclusion, therefore, is that Patrick has not established that the constitutional violations at issue involved state action for purposes of § 1983.

### III. CONCLUSION

We affirm the district court's grant of summary judgment on the ground that Patrick has failed to establish sufficient state action to support a § 1983 claim.

AFFIRMED.