Stephen GAINES, Plaintiff,

v.

**TEXAS TECH UNIVERSITY, et al., Defendants.**

Civil Action No. 3:97–CV–0317–D.

United States District Court, N.D. Texas, Dallas Division.

June 2, 1997.

Christopher Alan Kalis, Law Office of Christopher A. Kalis, Dallas, TX, for Stephen Gaines.

James Carlton Todd, Atty. Gen. of Texas, Austin, TX, Scott Lamar Cole, Vinson & Elkins, Dallas, TX, Harry Max Reasoner, Vinson & Elkins, Houston, TX, for Texas Tech Univ.

James Carlton Todd, Atty. Gen. of Texas, Austin, TX, Richard Alan Grigg, Spivey Grigg Kelly & Knisely, Austin, TX, for William Dykes, Rhudy Maskew.

James Carlton Todd, Atty. Gen. of Texas, Austin, TX, for Ronn Reeger.

## MEMORANDUM OPINION AND ORDER

FITZWATER, District Judge.

Defendants Texas Tech University ("Texas Tech"), William "Spike" Dykes ("Coach Dykes"), Ronn Reeger ("Reeger"), and Rudy Maskew ("Coach Maskew") move to dismiss this action by plaintiff Stephen Gaines ("Gaines"), a former Texas Tech football player.[1] Gaines moves for leave to amend

---

**1.** Texas Tech and the individual defendants have filed separate motions to dismiss. The individual defendants also move the court to require Gaines to file a Fed.R.Civ.P. 7 reply that addresses their defense of qualified immunity. In view of the court's order permitting Gaines to amend his complaint, the court denies this aspect of their motion, without prejudice, as moot.

his complaint in order to allege claims pursuant to 42 U.S.C. § 1983 for violations of unspecified rights under the United States Constitution. For the reasons that follow, the court grants Texas Tech's motion to dismiss and grants the individual defendants' motion to dismiss to the extent they are sued in their official capacity. The court also grants the individual defendants' motion to dismiss, but permits Gaines to amend his complaint, The court grants Gaines' motion for leave to amend.

I

Gaines sues defendants alleging civil RICO[2] violations and pendent state claims for breach of contract, negligence, breach of fiduciary duty, and fraud based on conduct that he contends defendants undertook while he was a Texas Tech football player from the fall of 1990 through the summer of 1994. He alleges that the Texas Tech head football coach—defendant Coach Dykes—and other university employees engaged in illegal conduct as part of a scheme to attract and exploit talented football players, and to maintain their National Collegiate Athletic Association ("NCAA") eligibility.

Viewing the allegations of plaintiff's complaint in the light most favorable to him for purposes of deciding the motion to dismiss,[3] the facts of the case are as follows. Texas Tech recruited Gaines by promising that it would help him choose appropriate curricula, assuring him an opportunity to play football at Texas Tech, and guaranteeing him the chance to play professionally in the National Football League ("NFL"). Following his enrollment in the fall of 1990, Gaines grew homesick, withdrew from the institution, and returned home to live with his parents. At Coach Dykes' urging, he returned for the summer of 1991 and participated in two-a-days in preparation for the fall 1991 season. Gaines later withdrew from the University, and Texas Tech red-shirted him.

In the spring of 1992 Coach Dykes arranged for Gaines to attend junior college on a football scholarship. Although Gaines did not play football while he attended the junior college, Coach Dykes, defendant Coach Maskew, and/or their agents wired him money, in violation of the NCAA constitution, bylaws, rules, and regulations. In the summer of 1992 Gaines enrolled in a mathematics course at Texas Tech. Coach Maskew instructed Gaines to take more college hours so that he would be eligible to play football at Texas Tech that fall. Coach Maskew also arranged for Gaines to enroll at another junior college for a course entitled, "Coaching of Basketball." The junior college's basketball coach, who had dealings with members of Texas Tech Athletic Department staff, taught the course to four students who either were Texas Tech athletes or had athletic aspirations at other educational institutions. A Texas Tech assistant basketball coach completed a course assignment for Gaines. While enrolled at Texas Tech in the fall of 1992, Gaines started as a defensive lineman. During this time the University allowed him to take courses out of sequence and to earn grades from a football-friendly professor without regularly attending classes or taking tests.

In the summer of 1992, without Gaines' knowledge, Coach Maskew enrolled him in an "Old Testament Survey" correspondence course at a Florida institution. Gaines maintains that Coach Maskew and/or defendant Reeger forged Gaines' signature and/or completed forms as if Gaines had done so. Gaines learned of his enrollment inadvertently, when a representative of the institution telephoned him at home to inform him that he had successfully completed certain examinations. Gaines questioned the telephone call. When Coach Maskew learned of this, he ordered Gaines to come to Texas Tech immediately, and used threatening, intimidating, and extortionate acts. Coach Maskew and defendant Reeger thereafter provided Gaines with a copy of the final examination and answers, and told him to study for the test. Two days later, when he sat for the test, he was given the very examination for which he had been provided the answers.

---

2. Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq.

3. See, e.g., Royal Bank of Canada v. FDIC, 733 F.Supp. 1091, 1094 (N.D.Tex.1990) (Fitzwater, J.).

Gaines once again was a starting player for Texas Tech in the fall of 1993. He took 14 hours of course work, failing all but three hours—a course in "Coaching of Basketball," the same course he had taken earlier at a junior college. Gaines was a defensive leader and helped Texas Tech earn an appearance in the Sun Bowl, for which it received substantial revenues. Gaines enrolled at Texas Tech for 18 hours in the spring 1994 semester. After earning only 12 hours of credit, Texas Tech placed him on academic suspension. Gaines enrolled at another junior college for seven hours. In June 1994 Coaches Dykes and Maskew enrolled Gaines in a physical education course at a local Lubbock college in an attempt to make him eligible to play in the fall. Gaines injured his knee working out at the Texas Tech running track in preparation for the course conditioning requirement. The team trainer told Gaines the injury was only a sprain, and did not refer him to a doctor for a diagnosis. The injury prevented Gaines from completing his final examination at the college and rendered him academically ineligible to play football in the fall.

Gaines returned home to live with his parents, and later underwent arthroscopic surgery. Fewer than two months later, Gaines signed a professional football contract with the New England Patriots. He failed his physical, however, when the medical staff determined that he had torn his right anterior cruciate ligament and had sustained other possible damage. This voided Gaines' contract. The next month, Gaines underwent a complete reconstruction of his injured knee. Texas Tech has neither contacted him, offered to pay his medical expenses, nor advised him of any further benefits under his scholarship agreement for continuing education.

## II

■ Defendants maintain that Gaines' civil RICO claims against Texas Tech and the individual defendants in their official capacity [4] are barred by the Eleventh Amendment to the United States Constitution. The court agrees.

■ "Texas Tech, as a state institution, clearly enjoys Eleventh Amendment immunity." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 n. 3 (5th Cir.1996) (citing *Laxey v. Louisiana Bd. of Trustees*, 22 F.3d 621, 623 (5th Cir.1994); *Henry v. Texas Tech Univ.*, 466 F.Supp. 141, 144–146 (N.D.Tex.1979)). The Eleventh Amendment bars any claims brought against a state or state agency unless Congress has abrogated the state's immunity or the state has expressly waived its immunity to suit in federal court. *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 907–08, 79 L.Ed.2d 67 (1984). Congress must make its intention to abrogate the states' sovereign immunity "unmistakably clear in the language of the statute." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985). Congress has not unequivocally expressed its intention to abrogate the states' sovereign immunity from claims brought pursuant to RICO. *See Bair v. Krug*, 853 F.2d 672, 674–75 (9th Cir.1988) (holding *inter alia* in action alleging civil RICO claims that appellants had no argued or proffered authority that Congress had overriden Eleventh Amendment immunity); *Molina v. New York*, 956 F.Supp. 257, 260 (E.D.N.Y.1995) (dicta); *McMaster v. Minnesota*, 819 F.Supp. 1429, 1434 (D.Minn.1993), *aff'd*, 30 F.3d 976 (8th Cir.1994). Gaines has not demonstrated waiver. His RICO claims against Texas Tech and the individual defendants in their official capacity are therefore barred under the doctrine of sovereign immunity.

## III

The individual defendants move to dismiss Gaines' RICO claims. The court need only

---

4. "Suits against state officials in their official capacity are considered to be suits against the individual's office, and so are generally barred as suits against the state itself." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 n. 3 (5th Cir. 1996) (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70–71, 109 S.Ct. 2304, 2311–12, 105 L.Ed.2d 45 (1989)). Although claims for prospective injunctive relief brought against state officials in their official capacity are not suits against the state, *id.*, Gaines does not request such relief.

address whether Gaines has alleged an injury to his business or property.

18 U.S.C. § 1964(c) provides that a person injured in his business or property by reason of a violation of RICO may recover treble damages and attorney's fees. Section 1964(c) imposes a significant limitation upon the types of injuries that are compensable under RICO. In this case, it is unclear precisely what injuries Gaines alleges that he suffered. He has not responded to defendants' motions to dismiss and his pleadings are not models of clarity on this issue. Nevertheless, this court may not dismiss Gaines' RICO claims in the Fed.R.Civ.P. 12(b)(6) context unless it appears beyond doubt that he can prove no set of facts in support of his complaint that would entitle him to relief *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). The court agrees with defendants that Gaines alleges three potential RICO injuries in his complaint: (1) a knee injury; (2) pecuniary losses resulting from his knee injury, including loss of an NFL contract with the Patriots and medical expenses; and (3) loss of an educational opportunity. None is sufficient to avoid dismissal.

■ Personal injuries such as Gaines' knee injury, and their resulting pecuniary consequences, are not compensable under RICO. The term "business or property" does not denote physical harm to a person. *Genty v. RTC,* 937 F.2d 899, 918 (3d Cir.1991) (holding that plaintiffs could not recover under RICO for medical expenses and damages for emotional distress resulting from exposure to toxic waste) (citing *Reiter v. Sonotone Corp.,* 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979)). *Rylewicz v. Beaton Servs., Ltd.,* 888 F.2d 1175, 1180 (7th Cir. 1989) (holding that § 1964(c) does not permit recovery for personal injuries); *Grogan v. Platt,* 835 F.2d 844, 847–48 (11th Cir.) (families of murder victims could not recover under RICO for economic consequences of personal injuries inflicted by predicate acts of murder), *cert. denied,* 488 U.S. 981, 109 S.Ct.

531, 102 L.Ed.2d 562 (1988). Gaines alleges that he incurred a voided football contract and medical expenses resulting from his knee injury. These injuries are not compensable under RICO.

■ Gaines' alleged loss of educational opportunities is likewise deficient because it is not an injury to his "business or property." "[A] showing of 'injury' requires proof of concrete financial loss, and not mere 'injury to a valuable intangible property interest.'" *Oscar v. Students Coop. Ass'n,* 965 F.2d 783, 785 (9th Cir.1992) (en banc) (quoting *Berg v. First State Ins. Co.,* 915 F.2d 460, 464 (9th Cir.1990)); *In Re Taxable Municipal Bond Secs. Litig.,* 51 F.3d 518, 522 (5th Cir.1995) (plaintiff's contention that he had sustained lost "opportunity" to obtain loan too speculative to constitute RICO injury). *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 24 (2d Cir.1990) ("injury in the form of lost business commissions ... is too speculative to confer standing, because [plaintiff] only alleges that he would have lost commissions in the future, and not that he has lost any yet"). Any damages resulting from Gaines' lost educational opportunities are too speculative to be compensable under RICO. Setting a damage figure would require guesswork regarding Gaines' fortunes if Texas Tech had not recruited him or if more attention had been paid to providing him a quality education.[5]

## IV

Although the court agrees that Gaines has failed to state a RICO claim on which relief can be granted against the individual defendants, it will nevertheless permit Gaines to amend his complaint to allege such a claim if he can. Gaines filed a motion to amend on April 14, 1997. The individual defendants do not appear to oppose the amendment, although they contend they are entitled to immunity and that Gaines should be required to plead his claims in accordance with the standards applicable to a Rule 7(a) reply. The court grants Gaines leave to amend.

---

5. In view of this holding, the court need not determine whether an educational opportunity is "property" under Texas state law. *See Leach v. FDIC,* 860 F.2d 1266, 1274 n. 14 (holding that

"property" is an inherently state law-related term and that courts should look to state law when applying RICO).

Rather than direct that the clerk of court file the proposed amendment tendered with Gaines' motion for leave, the court deems it appropriate to afford Gaines the benefit of this ruling before requiring him to replead. Accordingly, his amended complaint must be filed within 20 days of the date this memorandum opinion and order is filed.[6]

    \*     \*     \*     \*     \*     \*

The court grants Texas Tech's motion to dismiss and grants the individual defendants' motion to dismiss to the extent they are sued in their official capacity. The court grants the individual defendants' motion to dismiss. The court grants Gaines' motion for leave to amend. By Rule 54(b) judgment filed today, the court dismisses Gaines' suit against Texas Tech, and against the individual defendants in their official capacity, without prejudice.

**SO ORDERED.**

---

**6.** The individual defendants move to dismiss the state-law pendent claims against them. In view of the uncertainty whether Gaines can allege a viable federal-law claim, the court declines to address these claims. *See* Rule 12(a)(4)(A). If Gaines cannot state a federal-law cause of action, any state-law claims are subject to dismissal in the court's discretion. If he can, the court can address the state-law claims at a later point.