William CONNOR, Individually and as Personal Representative of the Estate of Mable K. Connor, and Cynthia Coolbaugh, Individually and as Personal Representative of the Estate of Mary Ellen Comford, Plaintiffs,

v.

HALIFAX HOSPITAL MEDICAL CENTER, Hospice of Volusia/Flagler County, Halifax Medical Center Foundation, Inc., Halifax Health Care Systems, Inc., Steven J. Nelson, MA, MD, FCAP, Deborah Harley, Lisa Wycuff, Cecelia Stevens, Jane Doe(s) and John Doe(s), Jointly and Severally, Defendants.

No. 6:99–cv–1599–Orl–28JGG.

United States District Court,
M.D. Florida,
Orlando Division.

March 5, 2001.

Geoffrey N. Fieger, Paul W. Broshay, Arnold J. Matusz, Fieger, Fieger & Schwartz, P.C., Southfield, MI, Donald Lewis O'Dell, Meier, Lengauer, Bonner, Orlando, FL, for William Connor, Cynthia Coolbaugh.

Steven E. Siff, Bryan T. West, McDermott, Will & Emery, Miami, FL, for Halifax Hospital Medical Center, Halifax Health Care Systems Inc., Halifax Hospital Taxing District, Halifax Community Health Care Systems, Inc.

David William Spicer, Bobo, Spicer, Ciotoli, Fulford, Bocchino, Debevoise & Leclainche, P.A., West Palm Beach, FL, John W. Bocchino, Gregorio A. Francis, Ian D. Forsythe, Armando T. Lauritano, Bobo, Spicer, Ciotoli, Bocchino Orlando, FL, Eugene L. Ciotoli, Anthony P. Corsini, Bobo, Spicer, Ciotoli, Fulford, North Palm Beach, FL, D. Andrew DeBevoise, Thomas W. Poulton, DeBevoise & Poulton, P.A.Winter Park, FL, for Hospice of Volusia/Flagler County, Deborah Harley, Lisa Wycuff, Cecelia Stevens.

Robert Lewis Trohn, Jonathan Barnet Trohn Gray, Harris, Robinson, Lane, Trohn, Lakeland, FL, for Steven J. Nelson.

Francis Edmund Pierce, III, David B. Falstad, Gurney & Handley, P.A., Orlando, FL, for Ronald Reeves, M.D.

## ORDER

ANTOON, District Judge.

This cause came on for consideration without oral argument on the Motion by Defendants Halifax Hospital Medical Center, Halifax Medical Center Foundation, Inc., Halifax Hospital Taxing District, Halifax Health Care Systems, Inc., Halifax Community Health Care Systems, Inc. to Dismiss Complaint, or in the Alternative to Strike (Doc. 5), to which Plaintiffs filed a Response (Doc. 11); Motion by Defendant Steven J. Nelson, M.D. to Dismiss the Complaint (Doc. 7), to which Plaintiffs filed a Response (Doc. 21); and Motion by Defendants Hospice of Volusia/Flagler Counties, Deborah Harley, Lisa Wycuff, and Cecelia Stevens to Dismiss Complaint, or for a More Definite Statement (Doc. 12), to which Plaintiffs filed a Response (Doc. 20). The United States Magistrate Judge submitted a Report and Recommendation (Doc. 63, filed January 18, 2001) as well as an amendment clarifying the Report and Recommendation (Doc. 72, February 9, 2001) which together recommend that all of the counts against all of the Defendant be dismissed except for Plaintiffs' fifth count pursuant to 42 U.S.C. § 1983 against Halifax Medical Center Foundation. Plaintiffs filed Objections to the Report and Recommendation (Doc. 68, filed February 1, 2001), to which the Halifax Defendants filed a Response (Doc. 76, filed February 20, 2001).

Upon consideration of the Report and Recommendation and the pleadings, it is **ORDERED** and **ADJUDICATED** as follows:

1. The United States Magistrate Judge's Report and Recommendation (Doc. 63, filed January 18, 2001) is **ADOPTED.**

2. The Motion to Dismiss filed on behalf of the Halifax Medical Center Foundation, Inc. (Doc. 5) is **DENIED.**

3. The Motion to Dismiss filed on behalf of Defendants Halifax Hospital Medical Center, Halifax Hospital Taxing District, Halifax Health Care Systems, Inc., and Halifax Community Health Care Systems, Inc. (Doc. 5) is **GRANTED,** and the complaint as to these Defendants is **DISMISSED** without prejudice.

4. The Motion by Defendant Steven J. Nelson, M.D. to Dismiss the Complaint (Doc. 7) is **GRANTED,** and the complaint as to this Defendant is **DISMISSED** without prejudice.

5. The Motion to Dismiss filed on behalf of Defendants Hospice of Volusia / Flagler Counties, Deborah Harley, Lisa Wycuff, and Cecelia Stevens (Doc. 12) is **GRANTED,** and the complaint is **DISMISSED** as to these Defendants without prejudice.

6. Plaintiffs claims brought pursuant to the Racketeer Influenced and Corrupt Organization Act are **DISMISSED** as to each Defendant without prejudice.

7. Plaintiffs are granted leave to file an amended complaint on or before **March 23, 2001.**

## REPORT AND RECOMMENDATION TO THE UNITED STATES DISTRICT COURT

This cause came on for a hearing on November 8, 2000 on the following motions:

| MOTION: | MOTION BY DEFENDANTS HALIFAX HOSPITAL, HALIFAX MEDICAL CENTER, HALIFAX HEALTH CARE, HALIFAX HOSPITAL TAXING DISTRICT, HALIFAX COMMUNITY HEALTH CARE SYSTEMS, INC. TO DISMISS COMPLAINT, OR IN THE ALTERNATIVE TO STRIKE [Docket No. 5] |
| --- | --- |
| FILED: | January 11, 2000 |
| RECOMMENDATION: | GRANTED in part and DENIED in part. |

| MOTION: | MOTION BY DEFENDANT STEVEN J. NELSON, M.D. TO DISMISS THE COMPLAINT [Docket No. 7] |
| --- | --- |
| FILED: | January 13, 2000 |
| RECOMMENDATION: | GRANTED. |

| MOTION: | MOTION BY DEFENDANTS HOSPICE OF VOLUSIA/FLAGLER COUNTIES, DEBORAH HARLEY, LISA WYCUFF, AND CECELIA STEVENS TO THE DISMISS COMPLAINT, OR FOR A MORE DEFINITE STATEMENT [Docket No. 12] |
| --- | --- |
| FILED: | January 31, 2000 |
| RECOMMENDATION: | GRANTED. |

## I. BACKGROUND

### A. Plaintiffs' Claims

On December 15, 1999, plaintiffs William Connor and Cynthia Coolbaugh [the "plaintiffs"], acting both individually and as representatives of the estates of decedents Mable K. Connor and Mary Ellen Comford, respectively [the "decedents"], filed a five-count complaint. The complaint alleges violation of the decedents' rights under 42 U.S.C. § 1983, 1985, 1988, as well as various provisions of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et. seq.* ["RICO"] Docket No. 1.

The complaint alleges that each of the decedents died of a "massive overdose of Morphine" while in the care of the defendant Hospice of Volusia/Flagler County ["Hospice"] on March 18, 1998 and March 20, 1998. Docket No. 1 at ¶¶ 33, 39. Plaintiffs charge that these overdoses were

not accidental. Rather, plaintiffs claims that "[t]he actual cause of death of MABLE K. CONNOR and MARY ELLEN COMFORD was homicide due to the lethal injection of Morphine." Docket No. 1 at ¶ 60. Plaintiffs further charge that the defendants "conspired amongst each other to participate, directly or indirectly, in the scheme or artifice to deprive the Plaintiffs' decedents of the intangible right of honest medical services and of Plaintiffs' decedents' lives." Docket No. 1. at ¶ 73. In short, the plaintiffs charge that Hospice and the other defendants intentionally murdered decedents Mable K. Connor and Mary Ellen Comford for money, in order to maximize their own financial recovery from insurance companies and governmental agencies and limit their own financial liability for caring for severely ill patients at a loss. Docket No. 1 at ¶ 123(c). The complaint identifies six entities and four individuals as conspirators to murder.

### B. The Halifax Defendants

Halifax Medical Center Foundation, Inc. is a "governmental or municipal entity conducting business in the Counties of Volusia and/or Flagler, State of Florida." Docket No. 1 at ¶ 12. It owns defendants Halifax Hospital Medical Center and Halifax Health Care Systems, Inc. Docket No. 1 at ¶¶ 14, 15. It owns and operates defendant Hospice (where the plaintiffs claim that the decedents were murdered). Docket No. 1 at ¶ 16. The operations of each of these defendants is funded by taxes set and imposed on the citizens of Volusia and Flagler Counties by defendant Halifax Hospital Taxing District. Docket No. 1 at ¶ 17. Halifax Community Healthcare Systems, Inc. is a "governmental or municipal entity conducting business in the Counties

of Volusia and/or Flagler, State of Florida." Docket No. 1 at ¶ 13. The complaint is silent as to this defendant's relationship to either defendant Hospice or to the other defendants with the word "Halifax" in their names. The defendants discussed in this paragraph (other than defendant Hospice) will be referred to as the "Halifax defendants." The complaint says nothing about the respective roles that each Halifax defendant allegedly played in the charged murder conspiracy.

### C. The Hospice Defendants

Hospice employed defendants Lisa Wycuff and Cecilia Stevens as nurses at the time of the decedents' deaths. Docket No. 1 at ¶¶ 20, 21. Plaintiffs claim that Wycuff and Stevens administered lethal doses of Morphine to the decedents causing their deaths. Docket No. 1 at ¶ 24.[1] Defendant Deborah Harley is the Executive Director of Hospice. Docket No. 1 at ¶ 19. Hospice, Wycuff, Stevens and Harley will be referred to as the "Hospice defendants."

### D. Steven J. Nelson, M.D.

Former Volusia County Medical Examiner William Reeves conducted an initial investigation into the decedents' deaths. Defendant Steven J. Nelson, M.D. later headed a panel of experts convened to review Reeves' findings. Docket No. 1 at ¶ 46. According to plaintiffs, Dr. Nelson issued a fraudulent report finding "insufficient clinical and/or scientific data to justify and substantiate a determination of a homicidal manner of death for any of the 19 patients whose records were reviewed [including the two decedents]." Docket No. 1 at ¶ 47, 54 (internal citation omitted).

---

1. The complaint also alleges the participation of one or more "Jane Doe(s) and/or John Doe(s)."

### E. Motions to Dismiss and Defenses

Each of the defendants has filed a motion to dismiss. *See* Docket Nos. 5 (Halifax defendants); 8 (Dr. Nelson); and 12 (Hospice defendants). Each of these motions seek dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and for failure to plead fraud with the specificity required by Rule 9(b). The Hospice defendants' motion also invokes Rule 8, arguing the complaint fails to provide a "short and plain statement of the claim showing that the pleader is entitled to relief." By order dated April 17, 2000, the Honorable Anne C. Conway ordered plaintiffs to file a RICO case statement. Docket No. 25. Plaintiffs filed this statement on May 8, 2000. Docket No. 32. On June 6, 2000, the Clerk reassigned this case to the Honorable John Antoon, II. Docket No. 36. On June 26, 2000, this matter was referred to the United States Magistrate for a report and recommendation. On November 8, 2000, this Court heard argument on the three pending motions to dismiss.

Each defendant raises the following common arguments in support of its motion to dismiss: 1.) RICO does not apply to claims based on personal injury or wrongful death; 2.) fraud must be plead with the specificity required by Rule 9(b); 3.) a § 1983 claim must specify the Constitutional rights that the defendants violated; and 4.) plaintiffs must adequately plead the conduct that violates § 1983. The Halifax defendants also claim immunity from punitive damages under Fla. Stat. § 768.28(5).[2] Citing Fla. Stat. § 768.28(9)(a), Dr. Nelson argues that he is both absolutely and qualifiedly immune from suit. The Hospice defendants argue that the complaint fails to allege conduct sufficient to satisfy the state action requirement of § 1983. Alternatively, they argue that if they are state actors at all, the fact that they have been sued in their individual capacities "rais[es] the issue of qualified immunity." Docket No. 12 at 13.

## II. APPLICABLE LAW

### A. The Racketeer Influenced and Corrupt Organizations Act

#### 1. Civil Cause of Action

RICO provides a private right of action under the following circumstances:

Any person injured **in his business or property** by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee....

18 U.S.C. § 1964 (emphasis supplied). Section 1962, entitled "Prohibited Activities," states as follows:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enter-

---

**2.** The Court need not address this argument in light of the concession made by the plaintiffs in their opposition memorandum:

Plaintiffs agree that claims for punitive damages and prejudgment interest against the government entities are generally not permitted. At trial the Plaintiffs will make no claim of punitive damages. The Court will determine what interest rate applies post-judgment.

Docket No. 11 at 15.

prise which is engaged in, or the activities of which affect, interstate or foreign commerce.

\* \* \* \* \* \*

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

The term "racketeering activity" is defined to include "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1)(A). "Racketeering activity" also includes certain acts punishable under other provisions of Title 18 of the United States Code, including § 1341 (relating to mail fraud) and § 1343 (relating to wire fraud). 18 U.S.C. § 1961(1)(B).

### 2. Requirement of Injury to Business or Property

■ In its private civil version, RICO is evolving into something quite different

from the original conception of its enactors. *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 523, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). However, some limits still exist on private RICO causes of action. *Grogan v. Platt,* 835 F.2d 844, 846 (11th Cir.1988). The words "business or property" as used in § 1964 are, in part, words of limitation. *Grogan,* 835 F.2d at 846. The ordinary meaning of these words *excludes* personal injuries and related pecuniary losses. *Grogan,* 835 F.2d at 847. Thus, a § 1964 plaintiff cannot recover under RICO for those pecuniary losses that are most properly understood as part of a personal injury claim. *Grogan,* 835 F.2d at 848. Several courts have rejected a § 1964 recovery for various injuries that were primarily personal injuries. *See, e.g., Doe v. Roe,* 958 F.2d 763 (7th Cir.1992) (divorce attorney's coercion of sexual relations with client); *Gaines v. Texas Tech University,* 965 F.Supp. 886 (N.D.Tex. 1997) (voided professional football contract, medical expenses and lost educational opportunities resulting from knee injury); *Ehrich v. B.A.T. Industries P.L.C.,* 964 F.Supp. 164 (D.N.J.1997) (addiction to nicotine); *Allman v. Philip Morris, Inc.,* 865 F.Supp. 665 (S.D.Cal.1994) (same).

### B. 42 U.S.C. § 1983

■ Section 1983 of Title 42 of the United States Code states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

To obtain relief under § 1983, a plaintiff must show that he or she was deprived of a federal right by a person acting under color of state law. *Patrick v. Floyd Medical Center*, 201 F.3d 1313, 1315 (11th Cir. 2000). Section 1983 is no source of substantive federal rights. *Whiting v. Traylor*, 85 F.3d 581, 583 (11th Cir.1996) (citations omitted). Instead, to state a section 1983 claim, a plaintiff must point to a violation of a specific federal right. *Traylor*, 85 F.3d at 583 (citations omitted).

### 1. State Action Requirement

■ The under-color-of-state-law element of the above-quoted language acts to exclude from § 1983's reach merely private conduct, no matter how discriminatory or wrongful. *American Manufacturers Mutual Insurance Company v. Sullivan*, 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999). However, § 1983 may reach the conduct of private persons under each of three separate circumstances. *Willis v. University Health Services, Inc.*, 993 F.2d 837, 840 (11th Cir.1993). First, it may reach the conduct of certain private actors who are performing functions that are traditionally the exclusive prerogative of the state. *Willis*, 993 F.2d at 840 [the "public function test"]. Second, it may reach private Constitutional violations that are coerced or at least significantly encouraged by the government. *Willis*, 993 F.2d at 840 [the "state compulsion test"]. Third, it may reach private conduct in those instances where the state has so far insinuated itself into a position of interdependence with the private party that it was a joint participant in the enterprise. *Willis*, 993 F.2d at 840 [the "nexus/joint action test"]. A court must determine on a case-by-case basis whether there is sufficient state action by a non-state actor to sustain a § 1983 claim. *Willis*, 993 F.2d at 840 (citations omitted). In order for a § 1983 plaintiff to sustain a claim under the nexus/ joint action test, the plaintiff must show that the symbiotic relationship between the public and private entities involved the alleged Constitutional violation. *Patrick*, 201 F.3d at 1316.

### 2. Suits Against Municipalities

■ A plaintiff may bring a § 1983 claim against a municipal defendant for deprivation of a federal right pursuant to an official policy, practice, or custom. *Villanueva v. City of Fort Pierce*, 24 F.Supp.2d 1364, 1368 (S.D.Fla.1998); *see also Monell v. Department of Social Services*, 436 U.S. 658, 690—91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Circa Ltd. v. City of Miami*, 79 F.3d 1057, 1060 (11th Cir.1996). However, a plaintiff must do more than simply allege that such an official policy exists. He must prove a course of action that was "consciously chosen" or "officially sanctioned or ordered." *Villanueva*, 24 F.Supp.2d at 1368; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality opinion).

■ There is no *respondeat superior* liability under § 1983. A plaintiff may pursue a § 1983 cause of action against a municipality for the actions of an officer only to the extent that the violations result from official custom or policy. *Monell*, 436 U.S. at 691, 98 S.Ct. 2018. A municipal officer's actions may be attributed to official policy only where the local official is a "decisionmaker [who] possesses final authority to establish municipal policy." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality opinion). That an official has discretion in the exercise of particular functions does not in itself give rise to municipal liability—the official must actually be a "final policymaker." *Pembaur*,

475 U.S. at 481—82, 106 S.Ct. 1292. For example, a county official may have discretion to hire and fire employees without also being the county official responsible for establishing county employment policy. *Pembaur,* 475 U.S. at 483, 106 S.Ct. 1292.

Whether a local official is a "final policymaker" is a question of state law for the district court to determine. *City of St. Louis v. Praprotnik,* 485 U.S. 112, 124, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (plurality opinion); *accord, Owens v. Fulton County,* 877 F.2d 947, 950 (11th Cir.1989). In assessing whether an official is a final policymaker, the courts look in part to whether the official is vested with finality of authority in his decisions. *See Jett v. Dallas Independent School District,* 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); *Praprotnik,* 485 U.S. at 127, 108 S.Ct. 915; *McMillian v. Johnson,* 88 F.3d 1573, 1579 (11th Cir.1996). It is well settled that a municipal official is not a final policymaker if his decisions are subject to meaningful review. *See Morro v. City of Birmingham,* 117 F.3d 508, 510 (11th Cir.1997) (police chief not a final policymaker because his decision was subject to review); *Scala v. City of Winter Park,* 116 F.3d 1396, 1401 (11th Cir.1997) (city manager not a final policymaker because his decision was subject to "meaningful administrative review"); *Hill v. Clifton,* 74 F.3d 1150, 1152 (11th Cir.1996) (city police chief was not a final policymaker because his employment decisions could be reversed by the city manager); *Martinez v. City of Opa–Locka,* 971 F.2d 708, 713–15 (11th Cir.1992).

### 3. Heightened Pleading Standard

Although Fed.R.Civ.P. 8 allows a plaintiff considerable leeway in framing his complaint, the Eleventh Circuit has tightened the application of Rule 8 with respect to § 1983 cases in an effort to weed out nonmeritorious claims. A § 1983 plaintiff must allege with some specificity the facts which make out his claim. *GJR Investments, Inc. v. County of Escambia,* 132 F.3d 1359, 1367 (11th Cir.1998) (citations omitted). Some factual detail in the pleadings is necessary to the adjudication of § 1983 claims. *GJR Investments,* 132 F.3d at 1367. This is particularly true in cases involving qualified immunity, where the court must determine whether a defendant's actions violated a clearly established right. *GJR Investments,* 132 F.3d at 1367.

### C. 42 U.S.C. § 1985

Section 1985 of Title 42 of the United States Code states:

(1) Preventing officer from performing duties

If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties;

(2) Obstructing justice; intimidating party, witness, or juror

If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure

such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

(3) Depriving persons of rights or privileges

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

Section 1985 contains separate provisions to redress five different types of conduct. *Kush v. Rutledge*, 460 U.S. 719, 724, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983). Three of the five broad categories relate to institutions and processes of the federal government [the "federal clauses of § 1985"]—1.) federal officers (§ 1985(1)); 2.) federal judicial proceedings (the first portion of § 1985(2)); and 3.) federal elections (the second part of § 1985(3)). *Kush*, 460 U.S. at 724, 103 S.Ct. 1483. The federal clauses of § 1985 contain no language requiring that the conspirators act with intent to deprive their victims of the equal protection of the laws. *Kush*, 460 U.S. at 725, 103 S.Ct. 1483.

The remaining two categories encompass underlying activity that is not institutionally linked to federal interests, and that is usually of primary state concern [the "state clauses of § 1985"]. *Kush*, 460 U.S. at 725, 103 S.Ct. 1483. The state clauses of § 1985 contain language requiring that the conspirators' actions be motivated by an intent to deprive their victims of the equal protection of the laws. *Kush*, 460 U.S. at 725, 103 S.Ct. 1483. This amounts to a requirement that the alleged conspirators be motivated by racial or other class-based invidiously discriminatory animus. *See Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971) (construing § 1985(3));

*Puglise v. Cobb County,* 4 F.Supp.2d 1172, 1182 (N.D.Ga.1998) (construing § 1985(2)), *citing Slavin v. Curry,* 574 F.2d 1256, 1262 (5th Cir.), *modified on other grounds,* 583 F.2d 779 (5th Cir.1978), *overruled on other grounds sub nom. Sparks v. Duval County Ranch Co., Inc.,* 604 F.2d 976 (5th Cir. 1979). Non-racial class-based animus means something more than a group of individuals who share a desire to engage in conduct that a § 1985(3) defendant disfavors. *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 269, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993). Otherwise, innumerable tort plaintiffs would be able to assert causes of action under § 1985(3) by simply defining the aggrieved class as those seeking to engage in the activity the defendant has interfered with, thus converting the statute into the "general federal tort law" that it was the very purpose of the animus requirement to avoid. *Bray,* 506 U.S. at 269, 113 S.Ct. 753.

### D. Immunities from Suit

Government officials may be sued in either their individual or official capacities, or both. Personal-capacity suits seek to impose personal liability—*i.e.* seek to take money out of a government official's personal bank account—for actions he takes under color of state law. *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Official-capacity suits, in contrast, generally represent an alternative way to plead an action against the entity of which the officer is an agent. *Graham,* 473 U.S. at 165, 105 S.Ct. 3099. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. *Graham,* 473 U.S. at 166, 105 S.Ct. 3099.

The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, qua entity, may possess, such as sovereign immunity under the Eleventh Amendment. *Graham,* 473 U.S. at 167, 105 S.Ct. 3099. If sued individually, however, a municipal officer may raise an affirmative defense of good faith, or "qualified," immunity. *Busby v. City of Orlando,* 931 F.2d 764, 772 (1991), *citing Graham,* 473 U.S. at 166—67, 105 S.Ct. 3099. A corollary to this rule is that a qualified immunity defense is unnecessary, and thus unavailable as a defense, to a cause of action arising under a statute that does not permit individual capacity suits. *See, Busby,* 931 F.2d at 772 ("a qualified immunity analysis is unnecessary under Title VII").[3]

#### 1. Eleventh Amendment Immunity For States and their Agencies

The Eleventh Amendment states as follows:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. The amendment not only bars suits against a state by citizens of another state, but also bars suits against a state by that state's own citizens. *Florida Ass'n of Rehabilitation Facilities, Inc. v. State of Fla. Dept. of Health and Rehabilitative Services,* 225 F.3d 1208,

---

**3.** *Busby* arose prior to the 1991 amendments to Title VII. *See Wilson v. Gillis Advertising Co.,* 1993 WL 503117, \*2–\*3 (N.D.Ala.1993). More recently, the Eleventh Circuit has stated that "[t]he only proper individual defendants

in a Title VII action would be supervisory employees in their capacity as agents of the employer." *Hinson v. Clinch County Georgia Board of Education,* 231 F.3d 821, 827 (11th Cir.2000), *citing Busby,* 931 F.2d at 772.

1219 (11th Cir.2000), *citing Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

### a. Parties Entitle to Invoke the Eleventh Amendment

■■■■ The Eleventh Amendment applies even when a state is not named as a party of record, if for all practical purposes the action is against the state. *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 101—02, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Edelman,* 415 U.S. at 663, 94 S.Ct. 1347 (1974); *Ex parte New York,* 256 U.S. 490, 500, 41 S.Ct. 588, 65 L.Ed. 1057 (1921). Thus, the Eleventh Amendment extends to state agencies and other arms of the state, but it does not reach lawsuits against municipalities and other discreet political subdivisions that are sufficiently independent from the state. *Mt. Healthy City School Dist. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Brown v. East Central Health Dist.,* 752 F.2d 615, 617 (11th Cir.1985). In determining whether the Eleventh Amendment provides immunity to a particular entity, the court examines the following factors: 1.) how state law defines the entity; 2.) what degree of control the state maintains over the entity; 3.) where the entity derives its funds; and 4.) who is responsible for judgments against the entity. *Miccosukee Tribe of Indians of Florida v. Florida State Athletic Com'n,* 226 F.3d 1226, 1231 (11th Cir.2000).

### b. Exceptions to Eleventh Amendment Immunity

#### i. *Ex parte Young* Exception

■■■■ Under the doctrine of *Ex parte Young,* Eleventh Amendment immunity does not extend to suits against state officers seeking prospective equitable relief to end continuing violations of federal law. *Florida Ass'n of Rehabilitation Facilities,* 225 F.3d at 1219. The *Ex parte Young* doctrine permits suit against a state official directly to end a violation of federal law, but not suits seeking relief that is intended indirectly to encourage compliance with federal law through deterrence, or that is intended simply to compensate the victim. *Florida Ass'n of Rehabilitation Facilities,* 225 F.3d at 1219. The Eleventh Amendment does not generally prohibit suits against state officials in federal court seeking only prospective injunctive or declaratory relief, but bars suits seeking retrospective relief such as restitution or damages. *Florida Ass'n of Rehabilitation Facilities,* 225 F.3d at 1219.

#### ii. Abrogation by Congress

■■■■ To determine whether Congress has abrogated a state's Eleventh Amendment immunity, a reviewing court must resolve two predicate questions: first, whether Congress has unequivocally expressed its intent to abrogate that immunity; and second, whether Congress did so pursuant to a valid grant of constitutional authority. *Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 120 S.Ct. 631, 640, 145 L.Ed.2d 522 (2000). Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute. *Kimel,* 120 S.Ct. at 639. Congress lacks power under Article I of the Constitution to abrogate the States' immunity. *Kimel,* 120 S.Ct. at 643. Section 5 of the Fourteenth Amendment, however, does grant Congress the authority to abrogate the States' immunity. *Kimel,* 120 S.Ct. at 643. However, the same language that serves as the basis for the affirmative grant of congressional power also serves to limit that power. *Kimel,* 120 S.Ct. at 644. In order to avoid crossing the line between permissible and impermissible exercise of

that power, Congressional legislation must evince a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end. *Kimel,* 120 S.Ct. at 644.

### iii. Waiver by State

 In order to constitute waiver of Eleventh Amendment immunity from suit in federal court, a state statute must employ language that is either explicit, or else admits of no other reasonable interpretation. *Edelman,* 415 U.S. at 673, 94 S.Ct. 1347; *Gamble v. Florida Dept. of Health and Rehabilitative Services,* 779 F.2d 1509, 1512 (11th Cir.1986). Evidence that a state has waived immunity in its own courts is not by itself sufficient to establish waiver of Eleventh Amendment immunity from suit in federal court. *Florida Dept. of Health and Rehabilitative Services. v. Florida Nursing Home Ass'n,* 450 U.S. 147, 150, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981); *Tuveson,* 734 F.2d at 734.

 Florida Statutes § 768.28 expressly waives Florida's sovereign immunity from tort actions brought in its own courts, with certain limitations. The Eleventh Circuit has held that § 768.28 does not waive Florida's Eleventh Amendment immunity. *See Hamm v. Powell,* 874 F.2d 766, 770 n. 3 (11th Cir.1989); *Gamble,* 779 F.2d 1509. To the contrary, subsection 768.28(16) declares the legislature's intention that Florida statutes not be construed to waive Eleventh Amendment immunity unless they explicitly waive immunity from suit in federal court. While Fla. Stat. § 760.10 applies on its face to governmental entities or agencies, *see* § 760.02(6)–(7); § 760.10, § 760 contains no express waiver of Eleventh Amendment immunity from suit in federal court.

### 2. Absolute Immunity For Individuals Sued Under § 1983

 Congress originally enacted 42 U.S.C. § 1983 as § 1 of the Civil Rights Act of 1871. *Imbler v. Pachtman,* 424 U.S. 409, 417 n. 10, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). · The coverage of § 1983 is broader than the pre-existing common law of torts. *Kalina v. Fletcher,* 522 U.S. 118, 123, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997). However, Congress intended the statute to be construed in the light of common-law principles that were well settled at the time of its enactment. *Kalina,* 522 U.S. at 123, 118 S.Ct. 502. Thus the court must examine common-law doctrine when identifying both the elements of the § 1983 cause of action and the defenses available to state actors. *Kalina,* 522 U.S. at 123, 118 S.Ct. 502. Section 1983 is silent with respect to immunities. *See Wood v. Strickland,* 420 U.S. 308, 317–18, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). Nevertheless, the legislative record gives no clear indication that Congress intended § 1983 to abolish all common-law immunities. *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

### a. Functional Analysis

 The Supreme Court and lower courts have developed a "functional approach" to determine whether executive branch public officials should be granted absolute immunity for taking particular actions, or whether they should enjoy instead only the qualified immunity normally afforded public officials. *Jones v. Cannon,* 174 F.3d 1271, 1282 (11th Cir.1999). In determining immunity, the court examines the nature of the function performed, not the identity of the actor who performed it. *Kalina,* 522 U.S. at 127, 118 S.Ct. 502. If the function is similar to a function which would have been immune when Congress enacted § 1983, and if a court determines

that § 1983's history or purposes support special protection for the activity, then the court will hold the official absolutely immune from liability. *Jones*, 174 F.3d at 1282.

### b. Absolute Immunity for Prosecutors

 The law of absolute immunity is well developed in the realm of criminal prosecution. Prosecutors performing prosecutorial functions receive absolute immunity from suit under 42 U.S.C. § 1983. *Long v. Satz*, 181 F.3d 1275, 1278 (11th Cir.1999). Although absolutely immune for actions taken as an advocate, the prosecutor has only qualified immunity when performing a function that is not associated with his role as an advocate for the state. *Cannon*, 174 F.3d at 1282. Circumstances in which the court has refused to apply absolute immunity to prosecutors include: 1.) pre-indictment investigation of whether a boot print at the scene of a crime was fabricated; 2.) post-indictment out-of-court statements to the press; 3.) knowingly making false statements of fact in an affidavit supporting an application for an arrest warrant; and 4.) giving legal advice to police during an investigation. *Cannon*, 174 F.3d at 1282 (collecting cases). Prosecutorial immunity may be asserted by a Rule 12(b)(6) motion, prompting the Court to inquire whether the allegations of the complaint disclose activities protected by absolute immunity. *Satz*, 181 F.3d at 1279.

### c. Burden of Proof

 The official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question. *Burns v. Reed*, 500 U.S. 478, 486, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties. *Buckley v. Fitzsimmons*, 509 U.S. 259, 278, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993).

### 3. Qualified Immunity For Government Official Sued in their Individual Capacities

 Qualified immunity shields government officials performing discretionary functions from civil liability so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. *See Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). As stated in *Malley*, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley*, 475 U.S. at 341, 106 S.Ct. 1092. The development of the qualified immunity doctrine, like the absolute immunity doctrine under § 1983, was based on historical analogy to common-law rules in 1871. See *Wyatt v. Cole*, 504 U.S. 158, 170, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992) (Kennedy, J., concurring). However, the Supreme Court completely reformulated qualified immunity along principles not at all embodied in the common law, replacing the inquiry into subjective malice that was frequently required at common law with an objective inquiry into the legal reasonableness of the official action. *Anderson*, 483 U.S. at 645, 107 S.Ct. 3034, *citing Harlow v. Fitzgerald*, 457 U.S. 800, 815–20, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

### a. Objective Standard

 Whether an official protected by qualified immunity may be held personally liable for an unlawful official action turns on the "objective legal reasonableness" of the action assessed in light of the legal rules that were "clearly established" at the

time it was taken. *See Anderson*, 483 U.S. at 639, 107 S.Ct. 3034. Simply stated, "[f]or qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *See Williamson v. Mills*, 65 F.3d 155, 157 (11th Cir.1995); *see also Lassiter v. Alabama A & M Univ.*, 28 F.3d 1146, 1150 (11th Cir.1994) (en banc).

██ Qualified immunity protects even reasonable but mistaken conduct, and requires that the unlawfulness of the official's conduct be apparent so that government officials can anticipate when their conduct may give rise to damages. *See Anderson*, 483 U.S. at 640–41, 646, 107 S.Ct. 3034. The standard is whether the conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *See Rogers v. Miller*, 57 F.3d 986, 988 (11th Cir.1995). Arresting officers, for example, are entitled to qualified immunity where there is arguable probable cause. *See Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir.1990). It is inevitable that law enforcement officials "will in some cases reasonably but mistakenly conclude that probable cause is present, and ... in such cases those officials ... should not be held personally liable." *See Anderson*, 483 U.S. at 641, 107 S.Ct. 3034.

### b. Irrelevance of Improper Motive

██ Because qualified immunity is evaluated under a purely objective standard without consideration for the government actor's subjective belief, evidence of improper motive is generally irrelevant to qualified immunity analysis. However, evidence of improper motive is an essential component of the plaintiff's affirmative

case. *Koch v. Rugg*, 221 F.3d 1283, 1293 (11th Cir.2000). Consequently, qualified immunity may protect a defendant from civil liability even when an issue of fact remains as to whether the defendant acted with subjective discriminatory intent. *See McMillian v. Johnson*, 88 F.3d 1554 (11th Cir.1996). Qualified immunity may even protect a defendant when the record shows that he has mixed motives:

> Unless it, as a legal matter, is plain under the specific facts and circumstances of the case that the defendant's conduct—despite his having adequate lawful reasons to support the act—was the result of his unlawful motive, the defendant is entitled to immunity. Where the facts assumed for summary judgment purposes in a case involving qualified immunity show mixed motives (lawful and unlawful motivations) and pre-existing law does not dictate that the merits of the case must be decided in plaintiff's favor, the defendant is entitled to immunity.

*Foy v. Holston*, 94 F.3d 1528, 1534–35 (11th Cir.1996).

### c. Burden of Proof

██ The official who asserts the defense of qualified immunity has the burden of establishing that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. If the official meets this burden, then the plaintiff must demonstrate that the official violated clearly established law measured under an objective standard of which a reasonable person would have known. *See Montoute v. Carr*, 114 F.3d 181 (11th Cir. 1997); *Powell v. Georgia Department of Human Resources*, 114 F.3d 1074 (11th Cir.1997); *Pickens v. Hollowell*, 59 F.3d 1203, 1205 (11th Cir.1995); *Hartsfield v. Lemacks*, 50 F.3d 950, 953 (11th Cir.1995).

▇ A plaintiff cannot rely on "general, conclusory allegations" or "broad legal truisms" to show that a right is clearly established. *See Kelly v. Curtis,* 21 F.3d 1544, 1550 (11th Cir.1994); *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1557 (11th Cir.1993). Rather, the plaintiff must show that when the defendant acted, the law established the contours of a right so clearly that a reasonable official would have understood his acts were unlawful. *See Kelly,* 21 F.3d at 1550; *accord, Anderson,* 483 U.S. at 640, 107 S.Ct. 3034.

### E. Motion to Dismiss for Failure to State a Claim

#### 1. Procedure for Making Motion

Federal Rule of Civil Procedure 12(b) allows a civil defendant the option to assert certain defenses to a complaint either in a responsive pleading or in a separate motion. Rule 12(b) lists the following possible defenses:

> (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a claim upon which relief can be granted, (7) failure to join a party under Rule 19.

Rule 12(b) further provides as follows with respect to the defense of failure of the complaint to state a claim:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

When a defendant seeks to file *both* an answer and a motion to dismiss, Rule 12(b) provides as follows regarding the relative timing of the two: "[a] motion making any of these defenses shall be made before pleading if a further pleading is permitted." However, Rule 12(h) provides a separate vehicle by which a defendant may subsequently assert certain of the Rule 12(b) defenses. Rule 12(h)(2) provides as follows:

> A defense of failure to state a claim upon which relief can be granted, a defense of failure to join a party indispensable under Rule 19, and an objection of failure to state a legal defense to a claim may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits.

Rule 12(h)(3) provides that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."

#### 2. Standard of Review

A court should not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *see also Wright v. Newsome,* 795 F.2d 964, 967 (11th Cir. 1986); *Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 703 (11th Cir.1985) (threshold is "exceedingly low"). In evaluating a motion to dismiss a complaint, the court must accept all the alleged facts as true, and draw all inferences from those facts in the light most favorable to the plaintiff. *See, e.g., Cruz v. Beto,* 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); *Hunnings v. Texaco, Inc.,* 29 F.3d 1480,

1483 (11th Cir.1994). The court, however, does not generally accept as true conclusory allegations. *South Florida Water Management Dist. v. Montalvo*, 84 F.3d 402, 408 n. 10; *accord, Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir.1974).

## III. APPLICATION AND ANALYSIS

### A. RICO Claims as to All Defendants

■ The Court has dissected the complaint, the RICO case statement, the various memoranda in opposition to the motions to dismiss, and the record of the November 8, 2000 hearing in order to identify the RICO injury that plaintiffs claim. Plaintiffs demand money damages for the decedents' loss of their lives, as well as the deprivation of their "intangible right of honest medical services." The loss of life is personal in nature, and therefore not cognizable under RICO, even assuming that there are related pecuniary losses. *Grogan*, 835 F.2d 844. The plaintiffs attempt to distinguish *Grogan* by claiming compensation for the "intangible right of honest medical services." This does not change the result. As was conceded at the November 8, 2000 hearing, plaintiffs can identify no case ever recognizing the "intangible right of honest medical services" as "property" for purposes of § 1964.

Plaintiffs further argue that the decedents acquired this right by virtue of their status as taxpayers in the Halifax Hospital Taxing District. But plaintiffs do not likely have standing as taxpayers. *See Bergen v. Edenfield*, 701 F.2d 906, 907 (11th Cir. 1983) ("[t]o obtain standing as a taxpayer, a plaintiff must complain about an action taken by Congress pursuant to its taxing and spending authority and must demonstrate a specific constitutional limitation upon that authority which Congress has exceeded."); *ASARCO Inc. v. Kadish*, 490

U.S. 605, 613–14, 109 S.Ct. 2037 (opinion of Kennedy, J.) ("we have likened state taxpayers to federal taxpayers, and thus we have refused to confer standing upon a state taxpayer absent a showing of direct injury, pecuniary or otherwise.") (citations and internal quotation marks omitted).

Even if the plaintiffs (through their decedents) had taxpayer standing, they have failed to allege that decedents possessed any of the traditional indicia of ownership of the "intangible right of honest medical services." For example, plaintiffs have not alleged an ability to alienate, or exclude others from, this right. Furthermore, although the decedents allegedly acquired this right through the payment of tax money (a tangible commodity), there is no suggestion that they would have been entitled to return of their tax money in exchange for waiver or surrender of this right. This Court cannot conclude that the "intangible right of honest medical services" constitutes § 1964 "property." At most, any such "intangible right" creates a duty that one or more of the defendants owed to the decedents, the breach of which occasions a state-law cause of action in tort for personal injury, not a RICO cause of action for injury to "business or property."

### B. § 1985 Claims as to All Defendants

All three of the motions to dismiss seek dismissal of Count V, which is captioned "42 U.S.C. § 1983 CIVIL RIGHTS VIOLATIONS." Despite the caption, Count V seeks relief under 42 U.S.C. §§ 1985 and 1988, in addition to § 1983. Only the Hospice defendants mention § 1985 in their motion to dismiss, and only in passing. Docket No. 12 at 18 ("plaintiffs' claims of conspiracy under ss.1983 and 1985 are simply too vague to put each defendant on notice of what plaintiffs allege is her role in the conspiracy.") However, the parties'

failure to fully brief the § 1985 issue does not prevent the Court from examining it.[4]

■■■■ The Court should not be required to guess as to what cause of action a plaintiff intends to assert, or to draft the pleading for him. There is no allegation in the complaint that the defendants interfered with the performance of duties of an officer of the United States (§ 1985(1)), obstructed justice in a federal court (the first portion of § 1985(2)), or interfered with a federal election (the second part of § 1985(3)). Instead, the complaint seems to assert some unspecified obstruction of justice at the state level, under the state clauses of § 1985. Therefore, the complaint must allege racial or other class-based invidiously discriminatory animus. It fails to do so. Instead, plaintiffs weakly attempt to convert the state clauses of § 1985 into a general federal tort law by defining the aggrieved class as those persons seeking to engage in the activity with which the defendants have allegedly interfered. *See Bray*, 506 U.S. at 269. Although the complaint stops far short of providing a "short and plain statement" of the § 1985 claim, one might speculate that the aggrieved class comprises Hospice patients who have been "murdered" because they were too expensive to care for. Plaintiffs cite no law or other authority recognizing any such suspect classification, or recognizing that defendants' alleged actions are invidiously discriminatory.[5]

## C. § 1983 Claims

Each of the three motions to dismiss assert that the complaint fails adequately to specify which Constitutional right or rights were violated and fails to plead causation of injury flowing from this violation with the specificity required in § 1983 actions.[6] The Halifax and the Hospice defendants also assert a failure of the complaint adequately to plead state action. Dr. Nelson does not raise this argument, but does claim entitlement to absolute and qualified immunity. The Court addresses these arguments as follows. First, the Court examines the Constitutional basis for the § 1983 claim. Second, the Court examines the state action argument raised by the Hospice defendants (and finding it dispositive, does not reach additional arguments). Third, the Court addresses the

---

4. The Court need not, at this stage, examine the application of § 1988, because that section does not create an independent cause of action. *See Estes v. Tuscaloosa County*, 696 F.2d 898 (11th Cir.1983).

5. The Court will not make the considerable intuitive leap to the conclusion that discrimination based upon expense of care is merely a proxy for discrimination based on age and disability. Even if the Court were willing to make this intuitive leap, it is unclear that this would change the outcome. *See Kimel*, 120 S.Ct. at 646 ("age is not a suspect classification under the Equal Protection Clause") (citations omitted); *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 442, 105 S.Ct. 3249 ("the Court of Appeals erred in holding mental retardation a quasi-suspect classification calling for a more exacting standard of

judicial review than is normally accorded economic and social legislation.")

6. The Hospice defendants (unlike the other defendants) assert this argument via Rule 8 rather than Rule 12(b)(6):

> Defendants must acknowledge that allegations of murder and conspiracy by a hospice and its nurses (if the allegations also met the *Patrick* test) would probably satisfy some test for a due process violation, but there are literally an infinite number of theories on which such a claim could be based. Thus, defendants do not seek dismissal of these claims under Rule 12(b)(6). Nonetheless, under Rule 8, and given the nonspecific nature of plaintiffs' claims, it would be appropriate to require plaintiffs to identify the specific process they claim was due and denied.

Docket No. 12 at 16–17 (citations omitted).

state action and causation arguments raised by the Halifax defendants. Fourth, the Court addresses Dr. Nelson's immunity arguments (and finding them dispositive, does not reach additional arguments).

### 1. Constitutional Basis for § 1983 Claims

■ Count V of the complaint refers to "rights guaranteed [to the decedents] by the Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States of America, 42 USC § 1983, 42 USC §§ 1985, 1988 and the Constitution of the State of Florida. . . ." Docket No. 1 at ¶ 123. In the first of its three memoranda in opposition to the various motions to dismiss, plaintiffs pare this list down to the Eighth and Fourteenth Amendments. Docket No. 11 at 11.[7] Despite plaintiffs' attempts to liken decedents to prisoners, the Eighth Amendment is clearly inapplicable. *See Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). This leaves only the Fourteenth Amendment as a possible avenue of § 1983 recovery.

### 2. State Action Argument by the Hospice Defendants

With respect to the state action requirement of § 1983 the Hospice defendants' motion argues, in relevant part, as follows:

> To meet the test articulated by *Patrick* in this case, plaintiffs would be required to allege that it was the official policy or custom of the district to have the Hospice-related defendants murder patients. In the event plaintiffs are unwilling, or unable with a reasonable factual basis,

to allege that the "murders" are part of the very basis of the relationship between the Halifax Hospital Taxing District and the Hospice, then plaintiffs have no basis on which to sue the Hospice or its nurses under s.1983 and the decision in *Patrick.*

Docket No. 12 at 2. The Court finds that Count V of the complaint makes just such an allegation:

> The Defendants officially sanctioned a policy, practice and custom of allowing and encouraging its employees to administer inappropriate and lethal doses of medication to elderly and infirm patients to allow it to maximize financial recovery from insurance companies and governmental agencies and/or to limit their own financial liabilities.

Docket No. 1 at ¶ 123(c). However, the Court disagrees with this reading of *Patrick.*

■ The Hospice defendants' reliance on *Patrick* is misplaced. The "custom or policy" language from *Patrick* deals with whether the actions of agents (such as Hospice nurses) can be imputed to a principal, not the deceptively similar issue of whether an agent shares in the principal's state-actor status.[8] With regard to the issue of an agent sharing a principal's state-actor status, *Patrick* reiterates that, under the nexus/joint action test, the relevant inquiry is whether "[t]he State has so far insinuated itself into a position of interdependence with the private party that it must be recognized as a joint participant in the challenged activity." *Patrick,* 201 F.3d at 1315 (citations and internal quota-

---

7. Plaintiffs do not address this argument in its two other opposition memoranda. In light of Local Rule 3.01(b), the Court views this silence as an election to forgo any theories of § 1983 recovery based on the Fifth Amendment and the Florida Constitution.

8. The Hospice defendants do correctly read *Patrick* for the proposition that a plaintiff seeking to invoke the nexus/joint action theory of state action must show that the symbiotic relationship between the public and private entities involved the alleged Constitutional violation. *Patrick,* 201 F.3d at 1316.

tion marks omitted). The existence of a "custom or policy" may be probative of the issue of state "insinuat[ion]," but it is not fully dispositive. Standing alone the plaintiffs' conclusory allegation of a "custom or policy" fails to meet the heightened pleading standard required in § 1983 actions. The Court refuses to subject the Hospice defendants (three of whom are individuals) to potentially ruinous liability absent a specific allegation that a specific state actor "insinuated itself into a position of interdependence" with the Hospice defendants.

### 3. Causation and State Action Argument by the Halifax Defendants

 The Court finds that the complaint adequately pleads state action as to only three of the five Halifax defendants— Halifax Medical Center Foundation, Inc., Halifax Community Healthcare Systems, Inc. and Halifax Hospital Taxing District. The complaint directly alleges that Halifax Medical Center Foundation, Inc. and Halifax Community Healthcare Systems, Inc. are "governmental or municipal" entities, and thus state actors. With respect to Halifax Hospital Taxing District, the complaint alleges that it imposes taxes on the citizens of Volusia and Flagler Counties. This clearly satisfies the "public function" test for state action. With respect to the remaining two Halifax defendants (Halifax Hospital Medical Center and Halifax Health Care Systems, Inc.), the complaint alleges that they are owned by Halifax Medical Center Foundation, Inc. However, absent an additional allegation of "insinuation" by the state-actor parent into the affairs of these entities, the Court cannot conclude that they are state actors.

 With respect to the three state-actor Halifax defendants, the complaint states a § 1983 cause of action against only one—Halifax Medical Center Foundation, Inc. The complaint alleges in relevant part that "[t]he Defendants officially sanctioned a policy, practice and custom of allowing and encouraging its employees to administer inappropriate and lethal doses of medication to elderly and infirm patients...." Docket No. 1 at ¶ 123(c). However, the Court finds this allegation relevant only with respect to Halifax Medical Center Foundation, Inc., which (according to the complaint) owns Hospice. The complaint fails to explain how this allegation could be relevant with respect to defendants Halifax Hospital Taxing District (which merely provides tax monies to fund the operations of Hospice) and Halifax Community Healthcare Systems, Inc. (whose relationship, if any, to Hospice or any of the other Halifax defendants is not described in the complaint).

### 4. Dr. Nelson's Immunity Defenses

Dr. Nelson asserts immunity under Fla. Stat. § 768.28(9)(a), absolute immunity and qualified immunity from suit. The Court discusses these in turn.

#### i. Florida Statutory Immunity

 Fla. Stat. § Fla. Stat. § 768.28(9)(a) provides that:

No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. However, such officer, employee, or agent shall be considered an adverse witness in a tort action for any injury or damage suffered as a result of

any act, event, or omission of action in the scope of her or his employment or function. The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers shall be by action against the governmental entity, or the head of such entity in her or his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee, unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. Dr. Nelson's invocation of § 768.28(9)(a) misses the mark. State sovereign immunity might protect Dr. Nelson from state claims in state court, but has no application to claims in federal court under Section 1983. *Hufford v. Rodgers,* 912 F.2d 1338, 1341 (11th Cir.1990). Instead, the relevant inquiry is whether Dr. Nelson is an agent of the state (in which case the Eleventh Amendment protects him), or of the county (in which case it does not). *See Hufford,* 912 F.2d at 1341. Because Dr. Nelson's own supporting memorandum describes Dr. Nelson as "an agent or employee of Volusia County," [Docket No. 8 at 9] he is clearly not entitled to Eleventh Amendment immunity.

### ii. Absolute Immunity

Nelson cites only two cases in support of his absolute immunity argument. The first, *Babi–Ali v. City of New York,* 979

F.Supp. 268 (S.D.N.Y.1997), is easily distinguishable. Although it involved some § 1983 claims, the absolute immunity issue arose only with respect to state-law malicious prosecution claims. The second, *Dolin on Behalf of N.D. v. West,* 22 F.Supp.2d 1343 (M.D.Fla.1998), is more on point. *Dolin* involved two psychologists, one who was appointed by the Court and another who was retained as an expert witness. In upholding each psychologist's claim to absolute immunity, the *Dolin* court analogized the claims to ones for absolute immunity for witnesses and other individuals (including court appointed psychologists and guardians *ad litem*) performing quasi-judicial functions.

Dr. Nelson invites the Court to extend the reasoning of *Dolin* to a physician who, although not appointed by or testifying before a court, was appointed by a state governmental entity. This would require the Court to find as a matter of first impression that the function of medical examiner is similar to a function which would have been immune when Congress enacted § 1983 in 1871, and that § 1983's history or purposes support special protection for this activity. The Court declines to do so given the presumption that qualified rather than absolute immunity is sufficient to protect Dr. Nelson in the exercise of his duties. *Buckley v. Fitzsimmons,* 509 U.S. at 278, 113 S.Ct. 2606.

### iii. Qualified Immunity

Even the most indulgent reading of the complaint does not disclose any involvement by Dr. Nelson in the alleged conspiracy until well after the decedents' deaths. Therefore, he could not possibly have deprived decedents of either their lives or their "intangible right of honest medical services." Rather, the only conceivable § 1983 deprivation that Dr. Nelson could have committed would arise from his al-

leged cover-up of the true circumstances of the decedents' deaths.

 Plaintiffs cite a single case for the proposition that an intentional cover-up is cognizable under § 1983. *Gonsalves v. City of New Bedford,* 939 F.Supp. 921 (D.Mass.1996). However, *Gosalves* did not find that a cover-up committed under color of state law would, standing alone, give rise to a § 1983 cause of action. Instead, the *Gonsalves* court examined the effect of the alleged cover-up in the context of an on-going civil rights suit and noted that it had "caused the jury's inability to decide who [was] responsible for the constitutional violations which were proven and, therefore, injured the plaintiff by depriving her of the damage award she would have otherwise received." *Gonsalves,* 939 F.Supp. at 925; *see, also, Dinwiddie v. Brown,* 230 F.2d 465, 469 (5th Cir.1956) (dictum) ("[t]his is not to deny that if state officers conspire with private individuals in such a way as to defeat or prejudice a litigant's rights in state court, that would amount to a denial of equal protection of the laws by persons acting under color of state law.") The complaint contains no allegation as to how the plaintiffs' rights were prejudiced by Dr. Nelson's alleged cover-up, much less an allegation that Dr. Nelson violated the decedents' clearly established rights. Therefore, Dr. Nelson is entitled to qualified immunity with respect to the § 1983 claims.[9]

Accordingly, it is

**RECOMMENDED** that the Halifax defendants' motion to dismiss [Docket No. 5] filed January 11, 2000 should be **GRANTED** in part as to dismissal of all claims against all defendants other than Halifax Medical Center Foundation, Inc., and otherwise **DENIED.** All claims against defendants Halifax Medical Center Foundation, Inc., Halifax Hospital Taxing District, Halifax Health Care Systems, Inc., and Halifax Community Health Care Systems, Inc. should be **DISMISSED without prejudice.**

**FURTHER RECOMMENDED** that the Dr. Nelson's motion to dismiss [Docket No. 7] filed January 13, 2000 should be **GRANTED.** All claims against Dr. Nelson should be **DISMISSED without prejudice.**

**FURTHER RECOMMENDED** that the Hospice defendants' motion to dismiss [Docket No. 12] filed January 31, 2000 should be **GRANTED.** All claims against defendants Hospice, Deborah Harley, Lisa Wycuff, and Cecelia Stevens should be **DISMISSED without prejudice.**

Failure to file and serve written objections to the proposed findings and recommendations in this report, pursuant to 28 U.S.C. § 636(b)(1)(B) and (e) and Local Rule 6.02, within ten days of the date of its filing shall bar an aggrieved party from a de novo determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal.

**ORDER**

This cause came on for consideration without oral argument on the following motion:

MOTION: MOTION BY DEFENDANTS HALIFAX HOSPITAL, HALI-

---

**9.** Because the Court has elsewhere found the plaintiffs' § 1985 allegations inadequate, the Court need not reach the issue of whether Dr. Nelson's qualified immunity extends to § 1985 as well. *See Gooden v. Howard County,* 954 F.2d 960, 969 (4th Cir.1992) ("[t]heoretically, of course, it may be possible for an official to act in an objectively reasonable way but with such subjective animus that he or she is immune from suit under § 1983 but is liable under § 1985(3)'').

FAX MEDICAL CENTER, HALIFAX HEALTH CARE, HALIFAX HOSPITAL TAX, HALIFAX COMM. HEALTH FOR CLARIFICATION OF REPORT AND RECOMMENDATION [Docket No. 70]

FILED: February 2, 2001

DISPOSITION: GRANTED.

It is hereby ORDERED that the report and recommendation submitted by the undersigned to the United States District Judge on January 18, 2001 [Docket No. 63] is hereby AMENDED to substitute the following text for the final sentence of the final paragraph appearing on page 32:

"All claims under the Racketeer Influenced and Corrupt Organizations Act and 42 U.S.C. § 1985 against all of the Halifax defendants, and all claims under 42 U.S.C. § 1983 against defendants Halifax Hospital Medical Center, Halifax Hospital Taxing District, Halifax Health Care Systems, Inc., and Halifax Community Health Care Systems, Inc., should be DISMISSED without prejudice."